IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| ASTRO COMPANIES, LLC. | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| vs. | ) |
| | ) Case No. |
| WESTFAX, INC, and JOHN DOES 1-10 | ) |
| | ) |
| DEFENDANTS. | ) |
| | ) |
| | ) |
| | ) |

# COMPLAINT

Plaintiff, ASTRO COMPANIES, INC., brings this action through its attorneys, and alleges the following for its Complaint against Defendants, WESTFAX, INC. and JOHN DOES 1-10 (collectively "Defendants"):

## PRELIMINARY STATEMENT

1. This case challenges Defendants' practice of sending unsolicited facsimile advertisements in violation of the federal Telephone Consumer Protection Act of 1991 ("TCPA"), as amended by the Junk Fax Prevention Act of 2005, 47 USC § 227 ("JFPA"), and the regulations promulgated thereunder by the Federal Communications Commission ("FCC").

2. Plaintiff, ASTRO COMPANIES, LLC ("Astro"), brings this case against WestFax and JOHN DOES 1-10 under the TCPA.

3. Astro is informed and believes, and upon such information and belief avers, that this action is based upon a common nucleus of operative fact because the facsimile transmissions at issue were and are being done in the same or similar manner. This action is based on the same legal theory, namely liability under the TCPA.

**JURISDICTION AND VENUE**

4.  This Court has subject matter jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1332 and 47 U.S.C § 227.

**PARTIES**

5.  Astro is a limited liability company based in Florida, whose members are domiciled in Florida.

6.  On information and belief, Defendant, WESTFAX, INC. ("WestFax"), is a Colorado corporation with its principal place of business in Centennial, Colorado.

7.  John Does 1-10 will be identified through discovery, but are not presently known.

**FACTS`**

8.  WestFax is a fax broadcaster that has been sending high-volume fax communications since 1999.

9.  WestFax tells prospective customers "Broadcast fax is effective. Email gets lost in the inbox and direct mail tossed in the trash; broadcast faxes are perceived as time-sensitive communications that instantly capture the recipient's attention." https://westfax.com/broadcast-fax/ accessed August 20, 2023.

10. WestFax has devised an elaborate scheme that is a subterfuge for its high degree of direct involvement in what is possibly the largest junk fax operation in the United States. Over the years, in response to legal threats and allegations WestFax has claimed that it is not liable for violations of federal and state laws prohibiting or restricting junk faxes. WestFax has claimed that it has little direct involvement in the actual sending of the faxes. WestFax has claimed that its clients program WestFax's equipment to send the junk faxes, and that WestFax's clients are

responsible for any legal violations because defendant has no knowledge about the content of the faxes. WestFax's claims are false. In fact, WestFax is knowingly and integrally involved in sending up to millions of junk faxes to United States' recipients every day. Astro brings this case to put an end to WestFax's unlawful and unfair practices and for statutory damages.

11. WestFax has the capacity to send over 1,000,000 junk faxes per day.

12. The Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, 47 USC § 227 (hereafter the "TCPA" or the "Act"), makes it unlawful for any person to "use any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement . . ." 47 U.S.C. § 227(b)(1)(C). The restriction regarding unsolicited fax advertisements falls under "automated telephone equipment." 47 U.S.C. § 227(b)(1)(C).

13. The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

14. The TCPA defines the term "telephone facsimile machine" as any "equipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." 47 U.S.C. § 227(a)(3).

15. Online fax services use equipment, namely, a fax server, to convert "traditional faxes" into a readable form (such as a PDF) which is then either attached to an email and forwarded to the recipients' computer via email or is made available on a portal (a server) maintained by the

online fax service to be read by the online fax server subscriber/recipient and is available to be printed at the online fax service recipients' convenience.

16. Online fax services also contain equipment that has the capacity "to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper."

17. Astro is not an online fax services subscriber.

18. Astro provides online fax services to its customers.

19. Astro is the subscriber for each phone line that was sent the faxes at issue in this case.

20. Astro owns the equipment used to receive the faxes at issue.

21. Junk faxes are typically sent to Astro in bursts from junk fax senders such as Westfax.

22. When a junk fax burst occurs, it can fill all available telecommunications and information technology resources on Astro's network for a period of time, during which time Astro's telecommunications services are not free to receive non-junk faxes.

23. The junk faxes identified in this complaint were not received on phone numbers assigned by Astro to any of Astro's customers.

24. The regulations implementing the TCPA define "sender" as the "person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(11).

25. The chapter in which the TCPA is listed, Chapter 5, "Wire or Radio Communication," defines the term "person" to "include[ ] an individual, partnership, association, joint-stock company, trust, or corporation" *See* Communications Act of 1934, Definitions, 47 USC. § 153(39).

26. The TCPA creates a private right of action for any person or entity that is sent an advertisement in violation of the Act "or the regulations prescribed under" the Act and provides for "an action to recover for actual monetary loss from such violation, or to receive $500 in damages for each such violation, whichever is greater." *Id*. § 227(b)(3)(A)–(B).

27. **Opt-Out Notice Requirements**. The TCPA strengthened the prohibitions against the sending of unsolicited advertisements by requiring, in § (b)(1)(C)(iii) of the Act, that senders of faxed advertisements place a clear and conspicuous notice on the first page of the transmission that contains the following among other things (hereinafter collectively the "Opt-Out Notice Requirements"):

(1) A statement that the recipient is legally entitled to opt-out of receiving future faxed advertisements – knowing that he or she has the legal right to request an opt-out gives impetus for recipients to make such a request, if desired;

(2) A statement that the sender must honor a recipient's opt-out request within 30 days and the sender's failure to do so is unlawful – thereby encouraging recipients to opt-out, if they did not want future faxes, by advising them that their opt-out requests will have legal "teeth";

(3) A statement advising the recipient that he or she may opt-out with respect to all of his or her facsimile telephone numbers and not just the ones that receive a faxed advertisement from the sender – thereby instructing a recipient on how to make a valid opt-out request for all of his or her fax machines;

(4) The opt-out language must be conspicuous.

The requirement of (1) above is incorporated from § (b)(D)(ii) of the Act. The requirement of (2) above is incorporated from § (b)(D)(ii) of the Act and the rules and regulations of the Federal Communications Commission (the "FCC") in ¶ 31 of its 2006 Report and Order, 21 F.C.C.R. 3787,

2006 WL 901720, which rules and regulations took effect on August 1, 2006). The requirements of (3) above are contained in § (b)(2)(E) of the Act and incorporated into the Opt-Out Notice Requirements via § (b)(2)(D)(ii). Compliance with the Opt-Out Notice Requirements is neither difficult nor costly. The Opt-Out Notice Requirements are important consumer protections bestowed by Congress upon the owners of the telecommunications services and fax machines giving them the right, and means, to stop unwanted faxed advertisements.

28.     **2006 FCC Report and Order**. The TCPA, in § (b)(2) of the Act, directed the FCC to implement regulations regarding the TCPA, including the TCPA's Opt-Out Notice Requirements and the FCC did so in its 2006 Report and Order, which in addition provides among other things:

A. The definition of, and the requirements for, an established business relationship for purposes of the first of the three prongs of an exemption to liability under § (b)(1)(C)(i) of the Act and provides that the lack of an "established business relationship" precludes the ability to invoke the exemption contained in § (b)(1)(C) of the Act (*See* 2006 Report and Order ¶¶ 8-12 and 17-20);

B. The required means by which a recipient's facsimile telephone number must be obtained for purposes of the second of the three prongs of the exemption under § (b)(1)(C)(ii) of the Act and provides that the failure to comply with these requirements precludes the ability to invoke the exemption contained in § (b)(1)(C) of the Act (*See* 2006 Report and Order ¶¶ 13-16);

C. The things that must be done in order to comply with the Opt-Out Notice Requirements for the purposes of the third of the three prongs of the exemption under § (b)(1)(C)(iii) of the Act and provides that the failure to comply with these requirements precludes

6

the ability to invoke the exemption contained in § (b)(1)(C) of the Act (*See* 2006 Report and Order ¶¶ 24-34);

   D. The failure of a sender to comply with the Opt-Out Notice Requirements precludes the sender from claiming that a recipient gave "prior express invitation or permission" to receive the sender's fax (*See* Report and Order ¶ 48).

As a result thereof, a sender of a faxed advertisement who fails to comply with the Opt-Out Notice Requirements has, by definition, transmitted an unsolicited advertisement under the TCPA. This is because such a sender can neither claim that the recipients of the faxed advertisement gave "prior express invitation or permission" to receive the fax nor can the sender claim the exemption from liability contained in § (b)(C)(1) of the Act.

**The Fax Police**

29. WestFax, or a person or entity acting on behalf of Defendant, in violation of the TCPA, sent Astro an unsolicited fax advertisement on or about June 8, 2022 ("The Fax Police Ad"), a true and correct copy of which is attached hereto as Exhibit A.

30. WestFax engages in data scraping whereby it uses the fax lists of its own customers to compile target lists for Exhibit A.

31. WestFax engages in wardialing to compile its own proprietary fax lists to target Exhibit A

32. WestFax also uses the compiled proprietary fax lists on behalf of some of its customers that do not provide fax target lists themselves.

33. Astro did not give "prior express invitation or permission" to anyone to send the Fax to Astro, within the meaning of 47 U.S.C. § 227(a)(5).

34. The Fax Police Ad occupied Astro's fax line, making it unavailable for legitimate business purposes.

35. WestFax transmitted The Fax Police Ad successfully to Astro.

36. The Fax Police Ad does not personally address Astro.

37. Astro did not have an "established business relationship" with WestFax, within the meaning of 47 C.F.R. § 64.1200(f)(5).

38. The Fax Police Ad states, "Tired of receiving unwanted faxes? Here's a simple way to be removed from fax lists and it's free. Simple fax your unwanted faxes to (866) 553-7002 and the Fax Police will remove you from the fax lists."

39. The Fax does not state that a request not to send future fax advertisements is enforceable only if (A) the request identifies the telephone number to which the request relates, (B) the request is made using the means identified by the sender in the fax, and (C) the person making the request does not subsequently give the sender express invitation or permission to send fax advertisements.

40. On information and belief, the Fax was created by WestFax to generate sales for WestFax.

41. On information and belief, the Fax was physically transmitted by WestFax.

42. There is no reasonable means for Astro to avoid receiving unauthorized faxes from WestFax.

43. On December 2, 2014, the Honorable Judge James B. Zagel ruled denying a Motion to Dismiss in an eerily similar case in which a fax broadcaster called 127 High Street, Inc, ("127 High Street") sought dismissal of a Complaint for sending fax advertisements seeking fax advertisements which would be used by those defendants as prospective customers of the fax

broadcaster; the only difference is in that case "fax invites the recipients to do business with Defendants by soliciting recipients to submit advertisements in return for a fee through what amounts to a commercial fax-buying service." *Magic, Inc. v. 127 High Street, Inc.*, 2014 U.S. Dist. LEXIS 166551, at *5 (N.D. Ill. Dec. 2, 2014) (internal quotation omitted).

44. WestFax purchased the assets of 127 High Street.

45. WestFax stopped the fax-buying portion of the solicitations utilized by 127 High Street but continued marketing efforts targeting fax advertisers violating the TCPA with the goal of establishing business relationships with them.

46. The targeting of fax advertisers violating the TCPA with a goal of establishing business relationships dates back over 10 years.

47. WestFax created the fiction that it is The Fax Police.

48. The Fax Police Ad requests submissions of fax advertisements.

49. The Fax Police Ad does not disclose that WestFax will use fax advertisements submitted to solicit new business.

50. WestFax researches the fax advertisements it receives as a result of the The Fax Police Ad to locate prospects for its fax broadcasting business.

51. WestFax has actual notice that those sending out fax advertisements which were submitted by recipients of WestFax's The Fax Police Ad are violating the TCPA.

52. WestFax has been sending faxes claiming to be the Fax Police for over ten years.

53. For all fax advertisers that WestFax induces to switch to WestFax for fax broadcasting services, WestFax has a high degree of involvement in the sending of their advertisements via facsimile.

**Coast Credit**

54. One such fax advertiser, WestFax has a high degree of involvement and actual notice for is John Doe 1 d/b/a Coast Credit ("Coast Credit").

55. Between January 28, 2021 and June 22, 2023, WestFax, on behalf of Coast Credit, sent 8,579 fax advertisements to Astro.

56. Attached hereto as Exhibits B1, B2, B3, B4, B5, B6, B7, B8, and B9 are the 8,579 faxes WestFax successfully sent to Astro ("Subject Faxes").

57. The Subject Faxes occupied Astro's fax lines, making them unavailable for legitimate business purposes.

## COUNT I
## TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227
### (John Doe 1 d/b/a Coast Credit)

58. Astro incorporates all other paragraphs as though fully set forth herein.

59. John Doe 1 contracted WestFax to send the Subject Faxes via facsimile transmission from telephone facsimile machines, computers, or other devices to the telecommunications services and facsimile machines of Astro.

60. The Subject Faxes constituted advertisements under the TCPA and the regulations implementing the Act. John Doe 1 failed to comply with the Opt-Out Requirements in connection with the Subject Faxes.

61. The Subject Faxes were transmitted to Astro without prior express invitation or permission and/or John Doe 1 is precluded from asserting any prior express invitation or permission or that John Doe 1 had an established business relationship with Astro, because of the failure to comply with the Opt-Out Notice Requirements.

62. By virtue thereof, John Doe 1 violated the TCPA and the regulations promulgated thereunder by sending the Subject Faxes via facsimile transmission to Astro.

63. The TCPA is a strict liability statute, so John Doe 1 is liable to Astro even if its actions were only negligent.

64. John Doe 1 knew or should have known that (a) Astro had not given prior express invitation or permission for Defendant or anybody else to send faxes advertising the commercial availability or quality of John Doe 1's services; (b) Astro did not have an established business relationship; (c) John Doe 1 contracted WestFax to transmit the advertisements via facsimile; (d) the Subject Faxes did not contain the required Opt-Out Notice; and (e) John Doe 1's transmission of advertisements via facsimile that did not contain the required opt-out notice or were sent without prior express invitation or permission was unlawful.

## COUNT II
## TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227
### (WestFax)

65. Astro incorporates all other paragraphs as though fully set forth herein.

66. Facsimile broadcasters are liable under the TCPA for sending junk faxes, if they demonstrate "a high degree of involvement in or actual notice of the unlawful activity" and the fax broadcaster "fails to take steps to prevent such facsimile transmissions." 47 C.F.R. § 64.1200.

67. WestFax violated 47 U.S.C. § 227 et seq. by transmitting the Subject Faxes to Astro without displaying an opt-out notice compliant with 47 C.F.R. § 64.1200.

68. WestFax sent the Subject Faxes

69. WestFax had a high degree of involvement with the unlawful transmissions of the Subject Faxes.

70. WestFax's involvement with the transmissions of the Subject Faxes included, but is not limited to, the following:

    a. It sent the Subject Faxes;

    b. It designed the Subject Faxes;

    c. It mail-merged the Subject Faxes;

    d. It created the opt-out language that appeared on the Subject Faxes;

    e. It placed the opt-out language on the Subject Faxes;

    f. The opt-out mechanism it operated included no method to opt-out via facsimile;

    g. It provided an opt-out mechanism that was otherwise legally deficient as described herein;

    h. It created the list(s) of recipients to whom the Subject Faxes were sent, by, inter alia, purchasing information from list brokers;

    i. It maintained the list(s) of recipients to whom the Subject Faxes were sent, by inter alia, taking responsibility for processing opt-out requests;

    j. It provided the recipient lists used to send the Subject Faxes;

    k. It provided list(s) not to be used to send the Subject Faxes, including but not limited to those developed from The Fax Police program;

    l. It provided recipient lists to customers for the express purpose of sending unsolicited facsimile transmissions without verifying or investigating whether or not the customer had an existing business relationship with the recipient; It counseled customers on the legal requirements, including the opt-out notice, under the TCPA.

71. WestFax had actual notice of the unlawful transmissions of the Subject Faxes, including actual notice that the Subject Faxes did not display an opt-out notice compliant with 47 C.F.R. § 64.1200.

72. WestFax took no steps to prevent the unlawful transmissions of the Subject Faxes.

73. WestFax proactively ensured that unlawful transmissions would be sent.

74. WestFax approved the Putative Opt-Out Notice.

75. WestFax operated a Global Opt Out list (also known as a Global Removals list) for outbound faxes of its customers it had actual notice were violating the TCPA.

76. At all relevant times WestFax knew or should have known that the Subject Faxes were advertisements.

77. John Does 2-10 assisted WestFax in the transmission of the Subject Faxes.

78. Astro alleges that this action is based upon a common nucleus of operative facts because the facsimile transmissions at issue were and are being done in the same or similar manner. This action is based on the same legal theory, namely, liability under the TCPA for sending unsolicited fax advertisements. This action seeks relief expressly authorized by the TCPA, namely, an award of statutory damages in the minimum amount of $500 for each violation of the TCPA, and to have such damages trebled, as provided by § 227(b)(3) of the Act, in the event willfulness in violating the TCPA is shown.

WHEREFORE, Plaintiff, Astro Companies, LLC., demands judgment in its favor and against Defendants, WestFax, Inc. and John Does 1-10., as follows:

A. That the Court award actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater, and that the Court award treble damages of $1,500.00 if the violations are deemed "willful or knowing" in an amount totaling $12,868,500;

B. That Court enjoin Defendants from additional violations; and

C. That the Court award pre-judgment interest, costs, and such further relief as the Court may deem just and proper.

                                        Respectfully Submitted,
                                        **ASTRO COMPANIES, LLC,**
                                        Plaintiff,

                                        By: /s/Ross M. Good
                                        One of Its Attorneys

Ross Good. Esq.
LOFTUS & EISENBERG, LTD.
161 N. Clark, Suite 1600
Chicago, Illinois 60601
T: 312.899.6625
ross@loftusandeisenberg.com

Dated: September 11, 2023