**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| ASTRO COMPANIES, LLC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. 1:23-cv-02328 |
| WESTFAX, INC, DUCK DIVE | ) | |
| COMMUNICATIONS LLC d/b/a JBlast, | ) | |
| BARRY CLARK, CHAD MATHESON, and | ) | |
| JOHN DOES 1-10 | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

Plaintiff, ASTRO COMPANIES, INC., brings this action through its attorneys, and alleges the following for its First Amended Complaint against Defendants, WESTFAX, INC., DUCK DIVE COMMUNICATIONS LLC d/b/a JBlast, and JOHN DOES 1-10 (collectively "Defendants"):

## PRELIMINARY STATEMENT

1.     This case challenges Defendants' practice of sending unsolicited facsimile advertisements in violation of the federal Telephone Consumer Protection Act of 1991 ("TCPA"), as amended by the Junk Fax Prevention Act of 2005, 47 USC § 227 ("JFPA"), and the regulations promulgated thereunder by the Federal Communications Commission ("FCC").

2.     Plaintiff, ASTRO COMPANIES, LLC ("Astro"), brings this case against WestFax and JOHN DOES 1-10 under the TCPA.

3.     Astro is informed and believes, and upon such information and belief avers, that this action is based upon a common nucleus of operative fact because the facsimile transmissions

at issue were and are being done in the same or similar manner. This action is based on the same legal theory, namely liability under the TCPA.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1332 and 47 U.S.C § 227.

## PARTIES

5. Astro is a limited liability company based in Florida, whose members are domiciled in Florida.

6. On information and belief, Defendant, WESTFAX, INC. ("WestFax"), is a Colorado corporation with its principal place of business in Centennial, Colorado.

7. On information and belief, Defendant, DUCK DIVE COMMUNICATIONS LLC d/b/a JBlast ("JBlast"), is a Delaware corporation with its principal place of business in Centennial, Colorado.

8. On information and belief, Defendant, Barry Clark, is an individual domiciled in Orange County, California

9. On information and belief, Defendant, Chad Matheson is an individual domiciled in Denver County, Colorado.

10. John Does 1-10 will be identified through discovery but are not presently known.

## FACTS

11. WestFax is a fax broadcaster that has been sending high-volume fax communications since 1999.

12. WestFax tells prospective customers "Broadcast fax is effective. Email gets lost in the inbox and direct mail tossed in the trash; broadcast faxes are perceived as time-sensitive

2

communications that instantly capture the recipient's attention." https://westfax.com/broadcast-fax/ accessed August 20, 2023.

13.     WestFax has devised an elaborate scheme that is a subterfuge for its high degree of direct involvement in what is possibly the largest junk fax operation in the United States.

14.     Over the years, in response to legal threats and allegations WestFax has claimed that it is not liable for violations of federal and state laws prohibiting or restricting junk faxes.

15.     WestFax has claimed that it has little direct involvement in the actual sending of the faxes. WestFax has claimed that its client's program WestFax's equipment to send the junk faxes, and that WestFax's clients are responsible for any legal violations because defendant has no knowledge about the content of the faxes.

16.     WestFax is knowingly and integrally involved in sending up to millions of junk faxes to United States' recipients every day.

17.     Astro brings this case to put an end to WestFax's unlawful and unfair practices and for statutory damages.

18.     WestFax has the capacity to send over 1,000,000 junk faxes per day.

19.     The Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, 47 USC § 227 (hereafter the "TCPA" or the "Act"), makes it unlawful for any person to "use any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement . . ." 47 U.S.C. § 227(b)(1)(C). The restriction regarding unsolicited fax advertisements falls under "automated telephone equipment." 47 U.S.C. § 227(b)(1)(C).

20.     The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any

person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

21.    The TCPA defines the term "telephone facsimile machine" as any "equipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." 47 U.S.C. § 227(a)(3).

22.    Online fax services use equipment, namely, a fax server, to convert "traditional faxes" into a readable form (such as a PDF) which is then either attached to an email and forwarded to the recipients' computer via email or is made available on a portal (a server) maintained by the online fax service to be read by the online fax server subscriber/recipient and is available to be printed at the online fax service recipients' convenience.

23.    Online fax services also contain equipment that has the capacity "to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper."

24.    Astro is not an online fax services subscriber.

25.    Astro provides online fax services to its customers.

26.    Astro is the subscriber for each phone line that was sent the faxes at issue in this case.

27.    Astro owns the equipment used to receive the faxes at issue.

28.    Faxes can be sent to Astro in bursts from junk fax senders.

29.    When a fax burst occurs, it can fill all available telecommunications and information technology resources on Astro's network for a period of time, during which time Astro's telecommunications services are not free to receive non-junk faxes.

30.    The junk faxes identified in this complaint were not received on phone numbers assigned by Astro to any of Astro's customers.

31.    The regulations implementing the TCPA define "sender" as the "person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(11).

32.    The chapter in which the TCPA is listed, Chapter 5, "Wire or Radio Communication," defines the term "person" to "include[ ] an individual, partnership, association, joint-stock company, trust, or corporation" *See* Communications Act of 1934, Definitions, 47 USC. § 153(39).

33.    Because the TCPA creates a private right of action for those to whom unsolicited fax advertisements are sent, 47 U.S.C. § 227(b)(3), the statutory rights conferred by the TCPA are violated upon the sending of the unsolicited fax advertisement regardless of whether the fax is ultimately reviewed by an actual person.

34.    Plaintiff suffered numerous concrete injuries when Defendants sent unsolicited fax advertisements during the four-year period in violation of Plaintiff's statutory right not to be sent unsolicited fax advertisements.

35.    Defendants' unsolicited fax advertisements violate Plaintiff's right to privacy and interest in seclusion, are a nuisance, and interfere with interstate commerce.

36.    In addition to the foregoing, Defendants' unsolicited fax advertisements also cause harm to the Plaintiff in that said Faxes occupy fax lines, prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, use paper and ink toner if the fax was printed, waste the Plaintiff's time

that would have been spent on something else, and require additional labor and effort to attempt to discern the source and purpose of the unsolicited message.

37.     The TCPA defines the term "telephone facsimile machine" as any "equipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." 47 U.S.C. § 227(a)(3).

38.     A fax transmission is a 2-way conversation between two fax machines. A record of a successful transmission, i.e., a fax log, means that all documented pages were fully received. This is demonstrated by the event of the receipt from the receiving machine of the positive confirmation of receipt of the transmission. Further, the receiving machine must respond. If it does not, the fax transmission is recorded as unsuccessful.

39.     The attached exhibits demonstrate which faxes successfully transmitted. Each of the successfully transmitted fax advertisements demonstrate a concrete injury, show Astro had its rights under the TCPA violated, and has a claim under the TCPA for each successfully transmitted fax attached to this Complaint.

40.     Defendants' unsolicited fax advertisements were not based on an established business relationship ("EBR"), and do not display a proper opt-out notice as required by 47 C.F.R. § 227(b)(1)(C) and 47 C.F.R. § 64.1200(a)(4), thereby precluding the affirmative defense of EBR.

41.     Defendants did not obtain Plaintiff's prior express invitation or permission to send unsolicited fax advertisements.

**The Fax Police**

42.     WestFax, or a person or entity acting on behalf of Defendant, in violation of the TCPA, sent Astro an unsolicited fax advertisement on or about June 8, 2022 ("The Fax Police Ad"), a true and correct copy of which is attached hereto as Exhibit A.

43.     WestFax compiled its own fax target lists for sending Exhibit A.

44.     WestFax engages in wardialing to compile its own proprietary fax lists to target Exhibit A.

45.     Astro did not give "prior express invitation or permission" to anyone to send the Fax Police Ad to Astro, within the meaning of 47 U.S.C. § 227(a)(5).

46.     The Fax Police Ad occupied Astro's fax line, making it unavailable for legitimate business purposes.

47.     WestFax transmitted The Fax Police Ad successfully to Astro.

48.     The Fax Police Ad does not personally address Astro.

49.     Astro did not have an "established business relationship" with WestFax, within the meaning of 47 C.F.R. § 64.1200(f)(5).info

50.     The Fax Police Ad states, "Tired of receiving unwanted faxes? Here's a simple way to be removed from fax lists and it's free. Simple fax your unwanted faxes to (866) 553-7002 and the Fax Police will remove you from the fax lists."

51.     The Fax does not state that a request not to send future fax advertisements is enforceable only if (A) the request identifies the telephone number to which the request relates, (B) the request is made using the means identified by the sender in the fax, and (C) the person making the request does not subsequently give the sender express invitation or permission to send fax advertisements.

52.     The Fax Police Ad was created by WestFax to generate sales for WestFax.

53.     The Fax Police Ad was physically transmitted by WestFax.

54.     There is no reasonable means for Astro to avoid receiving unauthorized faxes from WestFax.

55.     On December 2,2014, the Honorable Judge James B. Zagel ruled denying a Motion to Dismiss in an eerily similar case in which a fax broadcaster called 127 High Street, Inc, ("127 High Street") sought dismissal of a Complaint for sending fax advertisements seeking fax advertisements which would be used by those defendants as prospective customers of the fax broadcaster; the only difference is in that case "fax invites the recipients to do business with Defendants by soliciting recipients to submit advertisements in return for a fee through what amounts to a commercial fax-buying service." *Magic, Inc. v. 127 High Street, Inc*., 2014 U.S. Dist. LEXIS 166551, at *5 (N.D. Ill. Dec. 2, 2014) (internal quotation omitted).

56.     WestFax purchased the assets of 127 High Street.

57.     WestFax stopped the fax-buying portion of the solicitations utilized by 127 High Street but continued marketing efforts targeting fax advertisers violating the TCPA with the goal of establishing business relationships with them.

58.     On or before December 4, 2020, WestFax purchased the domain JBlast.com from a company then called J2 Global (Nasdaq: JCOM).

59.     WestFax set up the company Duck Dive Communications LLC to operate JBlast.

60.     JBlast has operated JBlast.com since prior to June 1, 2021.

61.     JBlast holds itself out as a platform that "is a pay-as-you-go fax marketing platform that sends mass fax broadcasts to thousands of people quickly and easily."

62.     JBlast is a wholly owned subsidiary of WestFax.

63.     JBlast does not have its own equipment to broadcast faxes.

64.     JBlast uses WestFax's equipment to transmit faxes.

65.     The purpose of the Fax Police Ad was targeting of fax advertisers violating the TCPA with a goal of establishing business relationships.

66.     WestFax has been operating the Fax Police Ad program for at least 10 years.

67.     WestFax created the fiction that it is The Fax Police.

68.     The Fax Police Ad requests submissions of fax advertisements.

69.     The Fax Police Ad does not disclose that WestFax will use fax advertisements submitted to solicit new business.

70.     WestFax researches the fax advertisements it receives as a result of the The Fax Police Ad to locate prospects for its fax broadcasting business.

71.     WestFax has actual notice that those sending out fax advertisements which were submitted by recipients of WestFax's The Fax Police Ad are violating the TCPA.

72.     WestFax has been sending faxes claiming to be the Fax Police for over ten years.

73.     For all fax advertisers that WestFax induces to switch to WestFax for fax broadcasting services, WestFax has a high degree of involvement in the sending of their advertisements via facsimile.

**Coast Credit**

74.     Facsimile broadcasters are liable under the TCPA for sending junk faxes, including the inclusion of opt-out notices on unsolicited advertisements, if they demonstrate "a high degree of involvement in or actual notice of the unlawful activity" and the fax broadcaster "fails to take steps to prevent such facsimile transmissions." 47 C.F.R. § 64.1200 (emphasis added).

75.     WestFax had a high degree of involvement and actual notice for faxes it sent on behalf of John Doe 1 d/b/a Coast Credit ("Coast Credit").

76.     JBlast had a high degree of involvement and actual notice for faxes it sent on behalf of Coast Credit.

77.     Between January 28, 2021 and June 22, 2023, Coast Credit contracted WestFax and JBlast to send 8,579 fax advertisements to Astro.

78.     Attached hereto as Exhibits B1, B2, B3, B4, B5, B6, B7, B8, and B9 are the 8,579 faxes WestFax successfully sent to Astro ("Subject Faxes").

79.     The Subject Faxes occupied Astro's fax lines, making them unavailable for legitimate business purposes.

80.     On or about July 31, 2021, WestFax notified Coast Credit that it was to use JBlast for all fax broadcasting activities going forward.

81.     Prior to contracting WestFax to send any faxes, Coast Credit filled out WestFax's Account Set Up Form.

82.     From January 1, 2019 until approximately July 31, 2021, Coast Credit used WestFax.com's web portal or emailed WestFax staff with @WestFax.com email addresses about fax broadcasting.

83.     WestFax's web portal contained transmission logs for faxes transmitted, billing information, as well as additional information about Coast Credit's account.

84.     From July 31, 2021 to Present, Coast Credit used JBlast's web portal or emailed JBlast staff with @JBlast.com email addresses about fax broadcasting.

85.     Prior to using JBlast to send any faxes, Coast Credit did not fill out an Account Set Up Form.

86.     JBlast's web portal contained transmission logs for faxes transmitted, billing information, as well as additional information about Coast Credit's account.

87.     From January 1, 2019 until approximately July 31, 2021, Coast Credit relied on WestFax to provide an opt-out number and manage all opt-out requests.

88.     From approximately July 31, 2021 until approximately September 2023, Coast Credit recorded its own opt-out requests and provided them to WestFax.

89.     WestFax managed all opt-out requests provided by Coast Credit.

90.     From July 31, 2021 to Present, Coast Credit used JBlast's web portal or emailed JBlast staff with @JBlast.com email addresses about fax broadcasting.

91.     To initiate a fax broadcast, Coast Credit would communicate with order@jblast.com and provide a CallerID as well as mail-merge instructions.

92.     Coast Credit last successfully logged into the JBlast web portal during September 2023.

93.     JBlast disabled Coast Credit's ability to log into the JBlast web portal upon receipt of the original Complaint in this matter. (Doc. 1).

94.     JBlast destroyed records accessible to Coast Credit on the JBlast web portal upon receipt of the original Complaint in this matter. (Doc. 1).

95.     WestFax destroyed records accessible to Coast Credit on the WestFax web portal upon receipt of the original Complaint in this matter. (Doc. 1).

### CLAIMS

### COUNT I
### TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227
#### (John Doe 1 d/b/a Coast Credit )

96.     Astro incorporates all other paragraphs as though fully set forth herein.

97.     Coast Credit contracted WestFax to send the Subject Faxes via facsimile transmission from telephone facsimile machines, computers, or other devices to the telecommunications services and facsimile machines of Astro.

98.     The Subject Faxes constitute advertisements under the TCPA and the regulations implementing the Act. Coast Credit failed to comply with the Opt-Out Requirements in connection with the Subject Faxes.

99.     The Subject Faxes were transmitted to Astro without prior express invitation or permission and/or Coast Credit is precluded from asserting any prior express invitation or permission or that Coast Credit had an established business relationship with Astro, because of the failure to comply with the Opt-Out Notice Requirements.

100.    By virtue thereof, Coast Credit violated the TCPA and the regulations promulgated thereunder by sending the Subject Faxes via facsimile transmission to Astro.

101.    The TCPA is a strict liability statute, so Coast Credit is liable to Astro even if its actions were only negligent.

102.    From January 1, 2019 until approximately July 31, 2021, Coast Credit paid WestFax for the fax broadcasting services.

103.    From July 31, 2021 to Present, Coast Credit paid JBlast for the fax broadcasting services.

104.    Coast Credit provided JBlast a list of opt-outs it received via email approximately every three months.

105.    Coast Credit knew or should have known that (a) Astro had not given prior express invitation or permission for Defendant or anybody else to send faxes advertising the commercial availability or quality of Coast Credit's services; (b) Astro did not have an established business

relationship; (c) Coast Credit contracted WestFax to transmit the advertisements via facsimile; (d) the Subject Faxes did not contain the required Opt-Out Notice; and (e) Coast Credit's transmission of advertisements via facsimile that did not contain the required opt-out notice or were sent without prior express invitation or permission was unlawful.

**COUNT II**
**TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227**
**(WestFax)**

106.    Astro incorporates all other paragraphs as though fully set forth herein.

107.    Barry Clark is the owner of WestFax

108.    Chad Matheson is currently an employee of WestFax

109.    Chad Matheson has been an employee of WestFax since 2015.

110.    Chad Matheson is a Systems Architect at WestFax.

111.    Chad Matheson communicated via email with Coast Credit.

112.    Chad Matheson used the email address chad@westfax.com to conduct business on behalf of WestFax.

113.    Chad Matheson used the email address chad@chadmethson.com to conduct business on behalf of WestFax.

114.    WestFax has operated the website WestFax.com from 2019 to Present.

115.    JBlast is a wholly owned subsidiary of WestFax.

116.    Facsimile broadcasters are liable under the TCPA for sending junk faxes, if they demonstrate "a high degree of involvement in or actual notice of the unlawful activity" and the fax broadcaster "fails to take steps to prevent such facsimile transmissions." 47 C.F.R. § 64.1200.

117.    WestFax violated 47 U.S.C. § 227 et seq. by transmitting the Fax Police Ad to Astro without displaying an opt-out notice compliant with 47 C.F.R. § 64.1200.

118.    WestFax sent the Fax Police Ad.

119.    WestFax violated 47 U.S.C. § 227 et seq. by transmitting the Subject Faxes to Astro without displaying an opt-out notice compliant with 47 C.F.R. § 64.1200.

120.    WestFax sent the Subject Faxes.

121.    WestFax had a high degree of involvement with the unlawful transmissions of the Subject Faxes.

122.    WestFax's involvement with the transmissions of the Subject Faxes included, but is not limited to, the following:

a.  It sent the Subject Faxes;

b.  It participated in the design of the Subject Faxes;

c.  It mail-merged the Subject Faxes;

d.  Coast Credit provided WestFax lists of opt-outs it received via email approximately every three months.

e.  It created the lists of targets for the Subject Faxes were sent, by, inter alia, providing lists of targets to Coast Credit;

f.  It maintained the list(s) of recipients to whom the Subject Faxes were sent, by inter alia, taking responsibility for maintaining opt-out requests and ensuring that opt-out requests were checked against future fax broadcasts;

g.  It provided list(s) not to be used to send the Subject Faxes, including but not limited to those developed from The Fax Police program;

h.  It provided recipient lists to Coast Credit for the express purpose of sending unsolicited facsimile transmissions without verifying or investigating whether or not Coast Credit had an existing business relationship with the recipient;

      i.    It counseled Coast Credit on the legal requirements, including the opt-out notice, under the TCPA; and

      j.    It counseled Coast Credit on best practices for formatting and design of the Subject Faxes.

123.    WestFax had actual notice of the unlawful transmissions of the Subject Faxes, including actual notice that the Subject Faxes did not display an opt-out notice compliant with 47 C.F.R. § 64.1200.

124.    WestFax took no steps to prevent the unlawful transmissions of the Subject Faxes.

125.    WestFax harvested its other clients' databases of fax numbers and transmission logs to create one or more of the databases of fax numbers that were provided to Coast Credit.

126.    The databases of fax numbers created by WestFax include Astro's fax numbers that which were used to transmit the Subject Faxes.

127.    WestFax proactively ensured that unlawful transmissions would be sent by compiling the database of target fax numbers for Coast Credit.

128.    WestFax operated a Global Opt-Out list (also known as a Global Removals list) for outbound faxes of its customers it had actual notice were violating the TCPA.

129.    At all relevant times WestFax knew or should have known that the Subject Faxes were advertisements.

130.    John Does 1-10 assisted WestFax in the transmission of the Subject Faxes.

131.    Since becoming aware of this lawsuit, WestFax disabled Coast Credit's access to the JBlast web portal.

132.    Since becoming aware of this lawsuit, WestFax destroyed files related to this lawsuit which were previously available on WestFax's web portal.

133.    Astro alleges that this action is based upon a common nucleus of operative facts because the facsimile transmissions at issue were and are being done in the same or similar manner. This action is based on the same legal theory, namely, liability under the TCPA for sending unsolicited fax advertisements. This action seeks relief expressly authorized by the TCPA, namely, an award of statutory damages in the minimum amount of $500 for each violation of the TCPA, and to have such damages trebled, as provided by § 227(b)(3) of the Act, in the event willfulness in violating the TCPA is shown.

**COUNT III**
**TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227**
**(JBlast)**

134.    Astro incorporates all other paragraphs as though fully set forth herein.

135.    JBlast is a wholly owned subsidiary of WestFax.

136.    Chad Matheson communicated via email with Coast Credit.

137.    Chad Matheson used the email address chad@westfax.com to conduct business on behalf of JBlast.

138.    Chad Matheson used the email address chad@chadmethson.com to conduct business on behalf of JBlast.

139.    JBlast has operated the website JBlast.com from 2021 to Present.

140.    Facsimile broadcasters are liable under the TCPA for sending junk faxes, if they demonstrate "a high degree of involvement in or actual notice of the unlawful activity" and the fax broadcaster "fails to take steps to prevent such facsimile transmissions." 47 C.F.R. § 64.1200.

141.    JBlast violated 47 U.S.C. § 227 et seq. by transmitting the Fax Police Ad to Astro without displaying an opt-out notice compliant with 47 C.F.R. § 64.1200.

142.    JBlast sent the Fax Police Ad.

16

143.    JBlast violated 47 U.S.C. § 227 et seq. by transmitting the Subject Faxes to Astro without displaying an opt-out notice compliant with 47 C.F.R. § 64.1200.

144.    JBlast sent the Subject Faxes.

145.    JBlast had a high degree of involvement with the unlawful transmissions of the Subject Faxes.

146.    JBlast's involvement with the transmissions of the Subject Faxes included, but is not limited to, the following:

    a.  It sent the Subject Faxes;

    b.  It participated in the design of the Subject Faxes;

    c.  It mail-merged the Subject Faxes;

    d.  Coast Credit provided WestFax lists of opt-outs it received via email approximately every three months.

    e.  It created the lists of targets for the Subject Faxes were sent, by, inter alia, providing lists of targets to Coast Credit;

    f.  It maintained the list(s) of recipients to whom the Subject Faxes were sent, by inter alia, taking responsibility for maintaining opt-out requests and ensuring that opt-out requests were checked against future fax broadcasts;

    g.  It provided list(s) not to be used to send the Subject Faxes, including but not limited to those developed from The Fax Police program;

    h.  It provided recipient lists to Coast Credit for the express purpose of sending unsolicited facsimile transmissions without verifying or investigating whether or not Coast Credit had an existing business relationship with the recipient;

i.   It counseled Coast Credit on the legal requirements, including the opt-out notice, under the TCPA; and

j.   It counseled Coast Credit on best practices for formatting and design of the Subject Faxes.

147.   JBlast had actual notice of the unlawful transmissions of the Subject Faxes, including actual notice that the Subject Faxes did not display an opt-out notice compliant with 47 C.F.R. § 64.1200.

148.   JBlast took no steps to prevent the unlawful transmissions of the Subject Faxes.

149.   JBlast harvested its other clients' databases of fax numbers and transmission logs to create one or more of the databases of fax numbers that were provided to Coast Credit.

150.   The databases of fax numbers created by JBlast include Astro's fax numbers that which were used to transmit the Subject Faxes.

151.   JBlast proactively ensured that unlawful transmissions would be sent by compiling the database of target fax numbers for Coast Credit.

152.   JBlast operated a Global Opt-Out list (also known as a Global Removals list) for outbound faxes of its customers it had actual notice were violating the TCPA.

153.   At all relevant times JBlast knew or should have known that the Subject Faxes were advertisements.

154.   John Does 1-10 assisted JBlast in the transmission of the Subject Faxes.

155.   Since becoming aware of this lawsuit, JBlast disabled Coast Credit's access to the JBlast web portal.

156.   Since becoming aware of this lawsuit, JBlast destroyed files related to this lawsuit which were previously available on JBlast's web portal.

157.     Astro alleges that this action is based upon a common nucleus of operative facts because the facsimile transmissions at issue were and are being done in the same or similar manner. This action is based on the same legal theory, namely, liability under the TCPA for sending unsolicited fax advertisements. This action seeks relief expressly authorized by the TCPA, namely, an award of statutory damages in the minimum amount of $500 for each violation of the TCPA, and to have such damages trebled, as provided by § 227(b)(3) of the Act, in the event willfulness in violating the TCPA is shown.

**COUNT IV**
**TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227**
**(Barry Clark)**

158.     Astro incorporates all other paragraphs as though fully set forth herein.

159.     Barry Clark met with Coast Credit's owner in-person on more than one occasion.

160.     Barry Clark communicated with Coast Credit's owner via text message about fax broadcasting.

161.     Barry Clark required that Coast Credit's owner turn off his phone for in-person meetings.

162.     While attending in-person meetings, Barry Clark provided directions regarding the content of the Subject Faxes.

163.     Barry Clark suggested against using bold typefaces as it used more of recipients' toner and would only upset them.

164.     Barry Clark and the owner of Coast Credit discussed mail-merge capabilities at the in-person meetings.

165.     Barry Clark and the owner of Coast Credit discussed having the flyer say it came from an individual rather than a company at the in-person meetings.

166.    Barry Clark discussed with the owner of Coast Credit how opt-outs would be managed by WestFax once WestFax stopped providing the removal service to Coast Credit.

167.    Barry Clark counseled Coast Credit on the legal requirements, including the opt-out notice, under the TCPA.

168.    Barry Clark directed Chad Matheson to create a database of fax numbers for Coast Credit to use as targets.

169.    Since becoming aware of this matter, Barry Clark attempted to contact the owner of Astro.

170.    On November 27, 2023, Barry Clark left a voicemail for Astro.[1]

171.    In his voicemail, Barry Clark threatened to file a counterclaim for defamation against Astro for the filing of the original Complaint in this matter. (Doc. 1).

## COUNT V
## TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227
### (Chad Matheson)

172.    Astro incorporates all other paragraphs as though fully set forth herein.

173.    Barry Clark was the supervisor of Chad Matheson.

174.    Chad Matheson is a Systems Architect at WestFax.

175.    Chad Matheson communicated via email with Coast Credit.

176.    Chad Matheson used the email address chad@westfax.com.

177.    Chad Matheson used the email address chad@chadmethson.com.

178.    Chad Matheson provided Coast Credit one or more databases of fax numbers.

179.    Dropbox is a file hosting service used by Chad Matheson.

---

[1] The voicemail is available at https://grabify.link/TLE64R.

180.    Chad Matheson used Dropbox links to facilitate the transmission of one or more databases of fax numbers to Coast Credit.

181.    Chad Matheson harvested other clients' databases of fax numbers and transmission logs stored on the web portals of WestFax and JBlast to create one or more of the databases of fax numbers he provided to Coast Credit.

182.    The databases of fax numbers created by Chad Matheson include Astro's fax numbers that which were used to transmit the Subject Faxes.

183.    Some of the fax numbers Chad Matheson provided to Coast Credit contained full contact data including associated names and location.

184.    Some of the fax numbers Chad Matheson provided to Coast Credit contained SIC Codes.

185.    Chad Matheson discussed with Coast Credit the targeting of Coast Credit's faxes.

186.    Chad Matheson proactively ensured that unlawful transmissions would be sent by compiling one or more databases fax numbers for Coast Credit.

187.    Chad Matheson provided one or more databases of fax numbers to Coast Credit for the express purpose of sending unsolicited facsimile transmissions without verifying or investigating whether or not Coast Credit had an existing business relationship with any recipient.

188.    Chad Matheson created the lists of targets for the Subject Faxes.

189.    Chad Matheson's compensation was tied to the assistance he provided to Coast Credit.

WHEREFORE, Plaintiff, Astro Companies, LLC., demands judgment in its favor and against Defendants, WestFax, Inc., Duck Dive Communications LLC d/b/a JBlast, Barry Clark, Chad Matheson, and John Does 1-10., as follows:

A. That the Court award actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater, and that the Court award treble damages of $1,500.00 if the violations are deemed "willful or knowing" in an amount totaling $12,868,500;

B. That Court enjoin Defendants from additional violations; and

C. That the Court award pre-judgment interest, costs, and such further relief as the Court may deem just and proper.

Respectfully Submitted,
**ASTRO COMPANIES, LLC,**
Plaintiff,

By: _/s/Ross M. Good_____
One of Its Attorneys

Ross Good. Esq.
LOFTUS & EISENBERG, LTD.
161 N. Clark, Suite 1600
Chicago, Illinois 60601
T: 312.899.6625
ross@loftusandeisenberg.com