**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-02328-SKC-MEH

ASTRO COMPANIES, LLC,

     Plaintiff,

     v.

WESTFAX, INC,
DUCK DIVE COMMUNICATIONS LLC d/b/a JBlast,
BARRY CLARK,
CHAD MATHESON, and
JOHN DOES 1-10

     Defendants.

---

**PLAINTIFF ASTRO COMPANIES, LLC'S RESPONSE TO MOTIONS TO DISMISS FILED BY WESTFAX, INC., DUCK DIVE COMMUNICATIONS LLC d/b/a JBlast, and BARRY CLARK**

---

COMES NOW, Plaintiff ASTRO COMPANIES, LLC. ("Plaintiff"), by and through its undersigned counsel, and hereby respectfully requests this Court deny the Motions to Dismiss filed by WESTFAX, INC. (Doc. 39) ("WestFax"), DUCK DIVE COMMUNICATIONS LLC d/b/a JBlast (Doc. 38) ("JBlast"), and BARRY CLARK (Doc. 37) ("Clark") (collectively "WestFax Defendants"). In opposition to said Motions, Plaintiff states as follows:[1]

## I.    INTRODUCTION

---

[1] Plaintiff addresses all three motions in this single 24 page brief.

As explained in Plaintiff's First Amended Complaint (Doc. 10, "FAC"), WestFax Defendants allegedly operate possibly the largest junk fax operation within the United States. The alleged statutory violations all occurred in Colorado. WestFax Defendants sent in excess of **8,579 faxes** on behalf of one of its customers from Colorado to Plaintiff (FAC at ¶ 77-78, 120-122, 129, 130, 144-146, 153,154) as well as one fax WestFax Defendants are responsible for sending on their own behalf (FAC at ¶ 42-53, 65-72, 117-118, 141-142). Plaintiff seeks to arrest and punish WestFax Defendants' illegal conduct executed in Colorado. Defendants are liable for statutory damages totalling millions of dollars.

## II. THIS COURT HAS JURISDICTION OVER ALL CLAIMS AND ALL PARTIES TO THIS ACTION.

### a. 12(b)(2) Legal Standard

JBlast and Clark move for complete dismissal pursuant to Fed. R. Civ. P. 12(b)(2). [2] (Docs. 37, 38). Defendants erroneously argue "To obtain personal jurisdiction over a nonresident defendant in a **diversity action**, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *TH Agriculture & Nutrition, LLC v. Ace European Group Ltd.*, 488 F.3d 1282, 1286-87 (10th Cir. 2007) (citing *Pro Axess, Inc. v. Orlux Distrib'n, Inc.*, 428 F.3d 1270, 1276 (10th Cir. 2005) (quotation omitted) (Emphasis added). This action is brought pursuant to federal question jurisdiction, not diversity jurisdiction. (FAC at ¶ 4) (28 U.S.C. § 1331). The Supreme Court held that claims

---

[2] WestFax only moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) which will be addressed in Section III.

under the TCPA justify federal question jurisdiction. *Critchfield Physical Theraphy, P.C. v. Taranto Group, Inc.*, 2012 U.S. Dist. LEXIS 52545 (D. Kan. Apr. 16, 2012) citing *Mims v. Arrow Financial Services, LLC*, 565 U.S. 368 (2012); *See also Adolas, LLC v. Alexander Andrews & Associates, LLC*, Civil Action No. 19-cv-00881-MEH, 2020 U.S. Dist. LEXIS 45804 (D. Colo. Mar. 17, 2020) (The Tenth Circuit's standards for analysis is appropriate for determination of whether "a non-resident defendant could be haled into the District of Colorado in a diversity action."). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *Adolas*, at \*4 quoting *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998). The 12(b)(2) inquiry should end here and the 12(b)(2) Motions to Dismiss should be denied.[3]

### i. Personal Jurisdiction

There is no legitimate question of specific jurisdiction where all the tortious conduct occurred in Colorado. "When there are multiple defendants, as is the case here, 'minimum contacts must be found as to each defendant over whom the court exercises jurisdiction.'" *Western Acceptance, LLC v. General Agriculture, Inc.*, 2022 U.S. Dist. LEXIS 48886, at \*10 (D. Colo. Mar. 18, 2022) quoting *Home-Stake Prod. Co. v. Talon Petroleum, C.A.*, 907 F.2d 1012, 1020 (10th Cir. 1990). "In determining whether a federal court has personal jurisdiction over a defendant, the court must determine (1) whether the applicable statute

---

[3] The appropriate mechanism for the alleged concerns of JBlast and Clark is a Motion to Transfer pursuant to 28 U.S.C. § 1404(a).

potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Niemi v. Lasshofer*, 770 F.3d 1331, 1348 (10th Cir. 2014) (citing *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006)). "The Federal Rules of Civil Procedure incorporate the Colorado long-arm statute, which confers personal jurisdiction to the extent permitted by the United States Constitution." *Carper v. Peterson*, U.S. App. LEXIS 17605, at *7 (10th Cir. July 12, 2023) citing Fed. R. Civ. P. 4; Colo. Rev. Stat. § 13-1-124 (2023).

### ii. Minimum Contacts

"If the defendant has minimum contacts with the forum state, we must still determine whether exercising personal jurisdiction would offend traditional notions of fair play and substantial justice." *Emplrs Mutual Casualty Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1161 (10th Cir. 2010) (internal quotation omitted). "This reasonableness analysis requires the weighing of five factors: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies." *Id.* at 1161. These requirements preclude personal jurisdiction resulting from "random, fortuitous, or attenuated contacts." *Bell Helicopter Textron, Inc. v. Heliqwest Intern., Ltd.*, 385 F.3d 1291, 1296 (10th Cir. 2004)(quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475).

The plaintiff bears the burden of establishing personal jurisdiction over a defendant.

*Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984). When the district court does not hold an evidentiary hearing before ruling on jurisdiction, "the plaintiff need only make a prima facie showing" of personal jurisdiction to defeat a motion to dismiss. *Id*. A prima facie showing is made where the plaintiff has demonstrated facts that, if true, would support jurisdiction over the defendant. *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998). To defeat the plaintiff's prima facie case, a defendant "must present a compelling case demonstrating that the presence of some other considerations would render jurisdiction unreasonable." *Id*. (internal quotation marks omitted). A "plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). "Documentary evidence consists of the allegations in the complaint, as well as affidavits and any other evidence submitted by the parties." *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1192 (Colo. 2005) citing *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). Plaintiff alleges that Clark and JBlast are liable for tortious acts committed in Colorado including at least 8,580 faxes that bombarded Plaintiff that were dispatched from this jurisdiction.

"The 'minimum contacts' test may be met pursuant to either of two ways — general jurisdiction or specific jurisdiction. First, if a defendant has 'continuous and systematic general business contacts' with the forum state, it may be subjected to the general jurisdiction of the forum state's courts." *Auge v. Esbrook PC*, 656 F. Supp. 3d 1275, 1280 (D. Colo. 2023) quoting *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 416, (1984).

"Second, even in the absence of 'continuous and systematic' contacts, a state court may exercise specific jurisdiction over a defendant that 'purposefully directed' its activities at the state's residents, if the cause of action arises out of those activities." *Id.* at 1280-1281 citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985); *see also Benton v. Cameco Corp.*, 375 F.3d 1070, 1076 (10th Cir. 2005) ("A defendant's contacts are sufficient if the defendant purposefully directed its activities at residents of the forum, and the plaintiff's claim arises out of or results from actions by the defendant himself that create a substantial connection with the forum state.")). WestFax is domiciled in Colorado, Defendant Chad Matheson ("Matheson") [4] is domiciled in Colorado, Clark is domiciled in California, and JBlast is domiciled in Delaware but has all assets in Colorado. Colorado is the most appropriate forum.[5]

It is in everyone's interest for all claims against WestFax Defendants and Matheson to be resolved in a single case. This forum provides the most convenient and effective relief.

### b. Argument

"The TCPA does not make illegal the receipt of an unsolicited facsimile advertisement." *Cadenasso v. Metropolitan Life Insurance Co.*, 2014 U.S. Dist. LEXIS 52750, at *30 (N.D. Cal. Apr. 14, 2014). "[T]he TCPA prohibits the use of any device **to**

---

[4] It is undisputed that Matheson is domiciled in Colorado. (Doc. 36). By agreement, Matheson's deadline to Answer or Respond is April 18, 2024. (Doc. 43).
[5] This is true even under the appropriate 28 U.S.C. § 1404(a) analysis which states "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

**send**, to a telephone facsimile machine, an 'unsolicited advertisement.'" *Wendell H. Stone*

*Co. v. Five Star Advertising, LLC*, 2022 U.S. Dist. LEXIS 161496, at *9 (D. Colo. Sep. 7,

2022) (quoting 47 U.S.C. § 227(b)(1)) (Emphasis added). Colorado's "long-arm statute allows

Colorado's courts to exercise personal jurisdiction over a non-resident who commits 'a

tortious act' within the state when the cause of action relates to that tortious act…When

identifying a tortious act for purposes of determining whether harm occurred in Colorado,

we do not look at incidents in isolation, but instead at the 'totality of conduct' by the actor."

*Parocha v. Parocha*, 2018 CO 41, ¶ 13 (2018) (*See also* Colo. Rev. Stat. § 13-1-124(1)(b)). As

of this filing, it is undisputed that WestFax Defendants transmitted the faxes at issue in this

case from Colorado. Colorado is where each of the thousands of tortious acts occurred

### i.   Clark Has Purposefully Availed Himself of Jurisdiction in this District

Clark has subjected himself to this forum pursuant to both general and specific

jurisdictional analysis.

Clark is the owner of WestFax and continuously conducts duties on behalf of

WestFax and JBlast from California. (Docs. 37-1 at ¶¶ 1, 5; 38-1 at ¶¶ 1, 5; 39-1 at ¶¶ 1, 5,

collectively "Clark Declarations"). Neither WestFax nor JBlast are currently nor formerly

registered as foreign corporations of California. Despite this, WestFax invoices at issue in

this case indicate that payments should be made to "34179 Golden Lantern Street, Suite

204, Dana Point, CA 92629."[6] Additionally, Capo Beach Church has a webpage for Clark

---

[6] Plaintiff, WestFax Defendants, and Matheson are nearing an agreement on a Protective

which indicates that, according to Clark, Westfax "still has a Colorado HQ, but **I run the company our of [sic] our Dana Point office** at: 34179 Golden Lantern St Ste 204 Dana Point, CA 92629." (https://www.capobeachchurch.com/7438-2/, last accessed March 28, 2024) (emphasis added). Clark is not overstating his role as he runs all aspects of WestFax and JBlast from California. Given his ability to run all aspects of WestFax and JBlast from California, it is no burden on Clark to remain a party in this forum. California would not be a suitable alternative forum for this matter as neither Defendants WestFax nor JBlast have registered with California's Secretary of State to do business there and Matheson is not domiciled there.

Clark directs WestFax's employees working at WestFax's Colorado office to communicate with its customers to increase the volume of faxes being sent. First, it is Clark's custom and practice to instruct WestFax employee Evelyn Grifa, who worked at WestFax's Colorado office, to send proposals to junk faxers not using WestFax/JBlast to entice them to switch. (Attached hereto as Exhibit 1 is a sample proposal Clark instructed Evelyn Grifa to send via fax in 2015.[7] For example, JBlast's current domestic price per successful page sent via fax is advertised as $0.06. (https://jblast.com/pricing). WestFax

---

Order to govern confidential material. Plaintiff intends to provide WestFax Defendants and Matheson documentation to substantiate this volume after the Court enters the Protective Order.

[7] The junk faxers are identified based on faxes supplied by recipients of faxes substantially identical to the "The Fax Police" fax marked as Exhibit A to Plaintiff's First Amended Complaint. (Doc. 10-1). Plaintiff alleges that WestFax Defendants have been engaging in this strategy for over 10 years. (FAC at ¶¶ 55-56). **One of the reasons** that WestFax Defendants are liable is this this marketing campaign constitutes actual notice as required to be held liable under the Telephone Consumer Protection Act. 47 C.F.R. § 64.1200.

Defendants typically entices junk faxers, including but not limited to John Doe 1 d/b/a Coast Credit ("Coast Credit")[8], with a rate of $0.0115[9] per successful page sent. For a customer of WestFax Defendants successfully sending 12 million single page faxes per year (approximately 1,000,000 per month), that is the difference between paying $138,000 ($.0115 x 1,000,000 x 12) and $720,000 ($.06 x 1,000,000 x 12) annually. Coast Credit has been doing business with WestFax Defendants for approximately 10 years. In that time, WestFax Defendants have received gross revenue of roughly $1,380,000 for their role in sending the faxes at issue.[10]

Regarding specific jurisdiction, Clark met in-person with Coast Credit's principal to provide advice regarding the content for the faxes at issue in this case. (Docs. 10-2, 10-3, 10-4, 10-5, 10-6, 10-7, 10-8, 10-9, 10-10) (collectively "Coast Credit Faxes"). Clark would instruct Coast Credit's principal to turn off his phone while he provided advice regarding the content of the Coast Credit Faxes. Clark held these in-person meetings to increase the volume of junk faxes sent by Coast Credit using WestFax/JBlast which increased WestFax Defendants' revenue. At one such meeting, Clark promised Coast Credit that WestFax Defendants would provide the best quality fax numbers that would have a higher success

---

[8] Documentation is not being marked as Exhibits hereto as a Protective Order has not yet been entered.

[9] The current cost of a postage stamp is $0.68. Other than issues with legality, junk faxing is cheaper for everyone except the recipient.

[10] Documentation is not being marked as Exhibits hereto as a Protective Order has not yet been entered.

rate. (FAC at ¶¶ 125-127). From California, Clark instructed Matheson, an employee[11] of WestFax, to provide Coast Credit 6,229,596 fax numbers which, as Clark promised, were of extremely high quality. (FAC at ¶¶ 168, 183, 184).[12]

On or about July 30, 2021, Clark contacted Coast Credit to explain that Coast Credit would be switched from WestFax's portal to JBlast's portal. Clark then instructed WestFax employee Char McCrary ("McCrary"), who works in WestFax's Colorado office and using her WestFax email account, to confirm the transition from WestFax to JBlast with Coast Credit in writing. (Attached hereto as Exhibit 2 is June 30, 2021 email from McCrary's WestFax email account).

From his office in California, Clark meticulously monitors the quantity of faxes being sent by customers of WestFax Defendants (Attached hereto as Exhibit 3 is correspondence from Deanna Gasseling). On or about June 4, 2019, Clark instructed Deanna Gasseling to reach out to Coast Credit to inquire about increasing the weekly volume of junk faxes being transmitted as it had decreased in recent weeks. *Id.* It is Clark's attention to detail that makes WestFax Defendants collectively "possibly the largest junk fax operation in the United States." (FAC at ¶ 13). Based on the foregoing, Clark's contacts with Colorado cannot be characterized as merely "random, fortuitous, or attenuated contacts."

When this case was initially filed on September 11, 2023, only WestFax was a named

---

[11] Whether Matheson is an employee or an independent contractor is not relevant for purposes of this brief.

[12] Documentation is not being marked as Exhibits hereto as a Protective Order has not yet been entered. Plaintiff can provide documentation to support this to the Court for *in camera* inspection.

Defendant. (Doc. 1). WestFax's former counsel waived service on October 2, 2023. (Doc. 6). On November 27, 2023, Clark, knowing (1) that Plaintiff was represented by Counsel, and (2) that WestFax was represented by Counsel, attempted to contact Plaintiff and left a voicemail on behalf of WestFax threatening to file a counterclaim against Plaintiff in this Court. (FAC at ¶¶ 170-171, fn. 1). On December 21, 2023, Clark was added as a Defendant in this case. (FAC). The "totality of conduct" of Clark prior to the filing of this case and since the filing of this case strongly favor denying Clark's dismissal pursuant to 12(b)(2).

### ii.    This Court has Specific Jurisdiction Over JBlast who Engaged in Tortious Conduct in Colorado

JBlast has subjected itself to this forum through its only meaningful existence being this forum.[13] "The ultimate jurisdictional question is whether the subsidiary is 'doing the business of the parent.'" *Warad West, LLC v. Sorin CRM USA Inc.*, 119 F. Supp. 3d 1294, 1298 (D. Colo. 2015) quoting *Quarles v. Fuqua Indus., Inc.*, 504 F.2d 1358, 1364 (10th Cir. 1974). "[F]acts concerning the amount of control exercised by the corporate parent over its subsidiary are relevant." *SGI Air Holdings II Ltd. Liability Co. v. Novartis International AG*, 239 F. Supp. 2d 1161, 1166 (D. Colo. 2003). It is undisputed that WestFax is a corporation based in Colorado and JBlast is a wholly owned subsidiary of WestFax. (Clark Declarations at ¶¶ 2-3).

Plaintiff's First Amended Complaint alleges "JBlast does not have its own equipment

---

[13] Foreign entity registration in Colorado is governed by Colo. Rev. Stat. §§ 7-90-801, 7-90-802. It could be a legal conclusion for Plaintiff to merely allege that JBlast should register with Colorado's Secretary of State.

to broadcast faxes" and "JBlast uses WestFax's equipment to transmit faxes." (FAC at ¶¶ 63-64). The equipment JBlast uses to commit the tortious acts is located in Colorado. "[W]hen one corporation so dominates and controls another as to make that other a simple instrumentality or adjunct to it, the courts will look beyond the legal fiction of distinct corporate existence, as the interests of justice requires." *Rinehart v. Gov't Emps. Ins. Co.*, 2019 U.S. Dist. LEXIS 212450, at *7 (D. Ariz. Dec. 10, 2019). JBlast's corporate information makes the following representations: "JBlast is no longer affiliated with J2 Global brands; efax, efax Corporate, Protus, Protus IP Solutions, fax.com, myfax, SRFax, sFax, Scrypt, Metrofax, Venali, TrustFax, RapidFax, send2fax. jBlast is an independent Delaware Corporation." (https://jblast.com/corporate, last accessed March 28, 2024). To summarize, JBlast's website neither confirms nor denies that it performs the same function as its parent company WestFax. *Id.* JBlast's website does identify one office location in the state of Delaware: 1013 Centre Road, Suite 403S, Wilmington, DE 19805. (https://jblast.com/customer-agreement last accessed March 28, 2024). This is the address of jBlast's registered agent: Registered Agents Legal Services, LLC.[14] JBlast claims it is "merely the infrastructure provider." (Doc. 38 at 7). JBlast has no employees in Delaware. JBlast has no physical presence in Delaware. JBlast has no phone numbers with Delaware area codes. JBlast has no servers stationed at rented (colocation) facilities in Delaware. JBlast offers the same services to Colorado residents as it offers to residents of all residents

---

[14] It is notable that WestFax Defendants continue to refer to JBlast as "Duck Dive" while failing to acknowledge that JBlast's own website never acknowledges Duck Dive owns JBlast.

of the United States and Canada. https://jblast.com (last accessed March 28, 2024). JBlast was acquired in approximately 2021 and exists solely as a portal to engage fax broadcast customers to utilize WestFax's equipment for broadcasting faxes. (FAC at ¶¶ 60, 63-64). It is for this reason that Clark migrated WestFax's fax broadcast customers, including but not limited to Coast Credit, to JBlast in 2021. (FAC at ¶ 80). It is believed that JBlast's only asset is the website https://jblast.com.[15]

McCrary purports to currently be a WestFax Senior Account Executive as of this filing. (Attached hereto as Exhibit 4 is McCrary's LinkedIn Profile, accessed March 28, 2024). Though her WestFax email address has been char@westfax.com since 2021 she sometimes alternates and uses order@jblast.com as her email address. For example, after Clark migrated Coast Credit from WestFax to JBlast, McCrary communicated with Coast Credit using order@jblast.com regarding the faxing at issue in this case. (Attached hereto as Exhibit 5 is May 12, 2022 email chain from McCrary's JBlast email address; compare to Exhibit 2). Neither McCrary's employer nor office location changed from WestFax's Colorado office, only her email address. Though Coast Credit used JBlast's website for matters like retrieving invoices and reviewing other documents, "[t]o initiate a fax broadcast, Coast Credit would communicate with order@jblast.com and provide a CallerID as well as mail-merge instructions." (FAC at ¶ 91). JBlast's claim that neither general nor specific

---

[15] As of this filing, the IP address associated with JBlast's website (https://jblast.com) is 74.63.142.6 which is managed by the Internet Service Provider "Flexential **Colorado** Corp." https://whatismyipaddress.com/ip/74.63.142.6, last accessed April 2, 2024 (Emphasis added). The irony is overwhelming.

jurisdiction exists in Colorado is absurd.

### III.   PLAINTIFF STATES A CLAIM FOR VIOLATION OF THE TCPA AGAINST WESTFAX
#### a.   12(b)(6) Legal Standard

"A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint." *Reuter v. City of Montrose Police Department*, 2024 U.S. Dist. LEXIS 52845, at \*1-2 (D. Colo. Mar. 25, 2024) (citing *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw  the reasonable inference that the defendant is liable for the misconduct alleged." *Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Factual allegations must be enough to raise the right to relief above the speculative level." *Id.* 1136 (10th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"The federal statute provides a private right of action to persons who have incurred monetary damages as a result of violations of the TCPA, and such actions may be brought in either state []or federal court." *Makowski v. First National of Nebraska, Inc.*, 2013 U.S. Dist. LEXIS 26900, at \*20 (D. Colo. Feb. 6, 2013) citing *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012).

The TCPA prohibits the use of "any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C.

227(b)(1)(C). The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." *Id.* § 227(a)(5). The Federal Communications Commission ("FCC") regulations define "sender" as "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(11). The TCPA creates a private right of action for any person or entity that receives an advertisement in violation of the Act "to obtain a minimum "$500 in damages for each such violation," which the Court may increase to $1,500 if it finds the violations were "willful or knowing." *Id.* § 227(b)(3)(A)–(B). Plaintiff alleges the Coast Credit faxes and the Fax Police Fax violate the TCPA and ask this Court to hold WestFax Defendants liable.

Allegations in Plaintiff's First Amended Complaint exceed the Rule 8 standard required to survive a 12(b)(6) motion..

### b.  Argument

As WestFax Defendants correctly note, "a fax broadcaster's exemption from liability is based on the type of activities it undertakes, and only exists '[i]n the absence of a high degree of involvement or actual notice of an illegal use.'" (Docs. 37 at 7; 38 at 8; 39 at 4) (quoting 47 C.F.R. §64.1200(a)(4)(vii)). Plaintiff has specifically alleged WestFax Defendants had a high degree of involvement or actual notice of an illegal use with respect to the Coast Credit faxes. (FAC at ¶¶ 71, 75, 76, 123, 128, 147, 152). It is undisputed that Plaintiff need

not make such allegations of "of a high degree of involvement or actual notice of an illegal use" with respect to The Fax Police Fax because Plaintiff alleges WestFax Defendants sent that on their own behalf. (FAC at ¶¶ 42-53, 65-72, 117, 118, 141, 142).

"[T]he FCC has issued orders and rules finding that a fax broadcaster demonstrates a high degree of involvement in the transmission of fax advertisements when it 1) supplies the fax numbers used to transmit the advertisement or a source of fax numbers; 2) makes representations about the legality of faxing to those numbers; 3) advises a client about how to comply with the fax advertising rules; **or** 4) reviews, assesses, or determines the content of a fax message." *Levine Hat Co. v. Innate Intelligence, LLC*, 538 F. Supp. 3d 915, 921 (E.D. Mo. 2021) quoting *Paldo Sign & Display Co. v. Unified Mktg., LLC*, 2017 U.S. Dist. LEXIS 34416, 2017 WL 951313, at *7 (N.D. Ill. Mar. 10, 2017) citing *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of* 1991 (Report and Order and Third Order on Reconsideration), 21 FCC Rcd. 3787, 3808 (Apr. 6, 2006); *Rules and Regulations Implementing the Tel. Consumer Prot. Act ("TCPA") of 1991*, 68 Fed. Reg. 44144, 44169 (July 25, 2003))) (Emphasis added). Plaintiff's First Amended Complaint specifically alleges that WestFax Defendants engaged in 1 and 4.

Plaintiff alleges Defendants WestFax and JBlast assisted in the design of the Coast Credit faxes at issue because they created the final image via the mail-merge process. (FAC at ¶¶ 122c, 146c). Plaintiff specifically alleges Clark provided advice regarding the content of the faxes at issue. (FAC at ¶¶ 159-162).

Plaintiff alleges that Matheson, at the direction of Clark, provided Coast Credit

access to approximately 6,229,596 fax numbers to send Coast Credit junk faxes to. (FAC at ¶ 168). These 6,229,596 fax numbers included Plaintiff's fax numbers. (FAC at ¶ 182).[16] Matheson, acting at the direction of WestFax Defendants, created this list of fax numbers by harvesting them from WestFax Defendants' other clients without said clients' consent. (FAC at ¶¶ 125, 149, 181). By providing these fax numbers to Coast Credit, WestFax Defendants had actual notice of illegal use and had a high degree of involvement. According to WestFax Defendants own briefs, "Where a 'company whose products are advertised **has supplied the list of fax numbers**' for the purpose of sending faxes to those numbers, 'that company is in the best position to ensure that recipients have consented to receive the faxes and should be liable for violations of the prohibition.'" (Docs. 37 at 7; 38 at 9; 39 at 4) (quoting 18 FCC Rcd 14014, 14131, ¶195 (2003)) (Emphasis added). Plaintiff agrees with WestFax Defendants' assessment and intends to demonstrate that this alone is sufficient to hold WestFax Defendants liable regarding the Coast Credit faxes.[17]

Coupling together WestFax Defendants' role in the design and the control of the recipients' lists, plausibly demonstrate a high degree of involvement regarding the Coast Credit faxes. "A 'high degree of involvement' exists where the broadcaster (1) controls the recipient lists; and/or (2) controls the content of the transmissions." *Rinky Dink, Inc. v. Electronic Merchant Systems*, 2015 U.S. Dist. LEXIS 22108, at *18 (W.D. Wash. Feb. 24,

---

[16] The 6,229,596 fax numbers provided by Matheson are not being marked as an Exhibit hereto as a Protective Order has not yet been entered. Plaintiff can provide documentation to support this to the Court for in camera inspection.

[17] This is not the only basis upon which Plaintiff intends to hold WestFax Defendants liable for the Coast Credit faxes.

2015) quoting *Rules and Regulations Implementing the TCPA of 1991*, 68 F.R. 44144-01, 44169 (2003).

Finally, Plaintiff alleges WestFax and JBlast managed the removal list for the faxes at issue. (FAC at ¶¶ 128, 152). In *Levine Hat*, that fax broadcaster, ProFax, was held liable for the same conduct at summary judgment. This Court is not yet asked to decide a Motion for Summary Judgment. Plaintiff has pled sufficient facts to survive WestFax Defendants' Motions to Dismiss pursuant to 12(b)(6).

Separately, Clark Declarations exceed the scope of the relief sought pursuant to Fed. R. Civ. P. 12(b)(2) and are impermissibly used in support of dismissal pursuant to Fed. R. Civ. P. 12(b)(6). (Clark Declarations at ¶¶ 8-11).[18] "Generally, a court should not consider any evidence beyond the pleadings when ruling on a 12(b)(6) motion…and, if the court considers matters outside the complaint, 'the motion must be treated as one for summary judgment under Rule 56.'" Fed. R. Civ. P. 12(d). *Mostafa v. Garland*, 2024 U.S. Dist. LEXIS 1311, at *22 n.13 (D. Colo. Jan. 3, 2024) (quoting *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019)). "Absent leave of Court **and** exceptional circumstances, a party may file only one motion for summary judgment." (United States District Court Judge S. Kato Crews Standing Order at 4(a)) (Emphasis added). Plaintiff has not had the opportunity to conduct written discovery nor conduct a deposition of Clark or other witnesses identified

---

[18] In case there is any room for doubt, WestFax has not moved for dismissal pursuant to Fed.R. Civ. P. 12(b)(2) and only seeks dismissal pursuant to Fed.R. Civ. P. 12(b)(6). Clark's Declaration is relied upon in support of WestFax's Motion to Dismiss pursuant to Fed.R. Civ. P. 12(b)(6). (Doc. 39-1 at 2) (citing Clark Declarations at ¶¶ 8-11).

in the Parties Schedule. (Doc. 41).[19]

### c. WestFax Defendants' Three-Step Marketing Program

The importance of The Fax Police Fax cannot be overstated. As explained above, Plaintiff's complaint makes clear that the WestFax Defendants' marketing program was a three-step process: (1) WestFax Defendants would send The Fax Police Fax (Doc. 10-1) to ordinary recipients of junk faxes, (2) some recipients of The Fax Police Fax would provide junk faxes they have been receiving based on the promise that The Fax Police would help them stop receiving more junk faxes, (3) WestFax Defendants would identify the senders of those junk faxes and offer those senders cheaper rates to start faxing with WestFax Defendants. This three-step process may sound absurd at first blush, but it is anything but new.

On June 11, 2014, a putative class action case titled *Magic, Inc. v. 127 High Street, Inc. et. al.* (1:14-cv-04344) was filed in the Northern District of Illinois. That plaintiff[20] alleged defendant 127 High Street, Inc. ("127 High Street") was engaging in this same three step process with one modification in step 2: they were allegedly paying a bounty of $0.50/unique fax advertisement.[21] (Attached hereto as Exhibit 6 is 127 High Street Fax Ad). Junk faxers identified by 127 High Street were sent offer letters similar to Exhibit 1 by 127

---

[19] Should this Court consider granting a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), at a minimum, Plaintiff first requests the opportunity to conduct discovery regarding Clark Declarations at ¶¶ 8-11.
[20] Undersigned Counsel represented Magic, Inc. in that matter.
[21] Whether 127 High Street actually paid the promised bounty was never demonstrated.

High Street's affiliate company, Clear Choice Sales, LLC[22]. (Attached hereto as Exhibit 7 is Clear Choice Sales Fax Ad). WestFax purchased the assets of 127 High Street. (FAC at ¶ 56).

WestFax Defendants make numerous allegations about faxes sent on behalf of Coast Credit. (Docs. 37-39). Throughout the entirety of all three pending Motions to Dismiss, WestFax Defendants do not dispute that Plaintiff sufficiently pled WestFax Defendants are the senders of the Fax Police Fax. (FAC at ¶¶ 42, 45-53, 67-72, 117, 118, 141, 142; Doc. 10-1). WestFax Defendants only allege that the Fax Police Fax is not an advertisement. This argument falls flat.

It is "unlawful for any person within the United States to use any telephone facsimile machine...to send an unsolicited advertisement to a telephone facsimile machine..." *Magic, Inc. v. 127 High Street, Inc*., U.S. Dist. LEXIS 166551, at *4 (N.D. Ill. Dec. 2, 2014) (quoting 47 U.S.C. § 227(b)). "An unsolicited advertisement is 'any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission.'" *Id.* (quoting 47 U.S.C. § 227(a)(5)). The Fax Police Fax advertises the commercial availability of a service: "Simply fax your unwanted faxes to (866) 553- 7002 and the Fax Police will remove you from the fax lists." (Doc. 10-1). This advertisement was of tremendous commercial value to WestFax Defendants and offered a commercial service to Plaintiff: "the Fax Police will remove you from the fax lists." *Id*.; *See also Alpha Tech Pet v. Lagasse, LLC*, 205 F. Supp. 3d

---

[22] Clear Choice Sales, LLC was also a defendant in that litigation.

970, 975 (N.D. Ill. 2016) (denying motion to dismiss, holding "the elements of the FCC's description of an 'informational communication' call for a fact intensive examination of circumstances in which a particular fax is sent, and such a determination is not appropriate at this stage of the proceedings")). The WestFax Defendants' Three-Step is a practice in use for many years to attract new junk faxers to WestFax Defendants and that WestFax Defendants have actual notice from the inception that the faxing at issue violates the TCPA.

### d. Obligations to this Court

Counsel for Plaintiff and WestFax Defendants met and conferred via video conference on March 19, 2024 regarding inaccurate statements made in pleadings and in Clark Declarations. "As officers of the court, defense counsel has a duty of candor to the court and to opposing counsel. Justice requires that all involved in our legal system work to ensure that a true and accurate picture of the facts is presented to the court." *Fish v. Kobach*, 320 F.R.D. 566, 573 (D. Kan. 2017). Specifically, the video conference included discussion about paragraphs 9-11 of the Clark Declarations and statements regarding "Coast Credit Commercial Finance Group, a Minnesota company" in WestFax Defendants' briefs (Docs. 37 at 2, 38 at 2, 39 at 2). WestFax Defendants knew, prior to the filing of their briefs on March 12, 2024, that these statements were false.

WestFax Defendants' Motions to Dismiss (Docs. 37, 38, 39) relate to Plaintiff's operative First Amended Complaint which states that "[s]ince becoming aware of this lawsuit, WestFax disabled Coast Credit's access to the JBlast web portal" and "[s]ince becoming aware of this lawsuit, JBlast disabled Coast Credit's access to the JBlast web

portal." (FAC at ¶ 131, 155). In direct contradiction to representations WestFax Defendants have made to this Court, WestFax Defendants served their Initial Disclosures on March 15, 2024 indicating that the "Coast Credit Commercial Finance Group, a Minnesota company" identified in WestFax Defendants' Motions to Dismiss is not the sender of the at-issue faxes.[23] In addition to being aware of this from their own Initial Disclosures, this was discussed during the March 19, 2024 video conference.[24] As of this filing, WestFax Defendants have not amended any of their filings. WestFax Defendants should not be rewarded for providing this Court inaccurate information upon which to rule.

The Clark Declarations include the following statements:

9. A customer—not WestFax or Duck Dive—creates and provides the documents to be faxed, and creates and **provides the contact lists** for the faxes to be sent to.
10. The customer handles the entire process themselves—including creating the fax, **uploading the documents to WestFax or Duck Dive's infrastructure**, and providing the contact information for the faxes to be sent.
11. It is not WestFax's or Duck Dive's **business to provide advice or data** to be used to create a fax or determine the recipient of a fax.

(Clark Declarations at ¶¶ 9-11) (Emphasis added).

In particular, WestFax cites its **current** webpage (https://westfax.com/how-to) in support of the proposition that "WestFax is a customer driven fax broadcaster where the fax sender (not broadcaster) provides all the information, including the fax advertisement and

---

[23] The false allegations about "Coast Credit Commercial Finance Group, a Minnesota company" can be found at Doc. 37 at 2, 38 at 2, 39 at 2.
[24] Documentation generated by WestFax to further demonstrate this is not being marked as Exhibits hereto as a Protective Order has not yet been entered.

the recipient information." (Doc. 39 at 2; Clark Declarations at ¶¶ 9-11) (Emphasis added).

WestFax's brief omits that this particular webpage has been modified since WestFax

Defendants first became aware of the lawsuit to remove the section titled "Broadcast Fax:

How to send a Broadcast Fax" which used to show the following:



Broadcast Fax: How to send a Broadcast Fax

The Wayback Machine does not have this video archived.

Relevant Links
1. Broadcast Login Page
2. Broadcast Frequently Asked Questions
3. Launch this video in a seperate window: How to send a Broadcast Fax

(https://web.archive.org/web/20230608122036/https://westfax.com/how-to/, captured June 8,

2023). The webpage https://westfax.com/how-to from June 8, 2023 included a link to

"Broadcast Fax FAQ" (https://westfax.com/broadcast-fax-faq/) which has been removed

entirely since WestFax Defendants became aware of this litigation and now redirects to

https://westfax.com. Thankfully for the Court, a prior version of "Broadcast Fax FAQ" is

available and specifies that WestFax's "in-house account managers are experienced

professionals with years of service to the company. There is virtually no request, **merge** or

otherwise, they can't handle."

(https://web.archive.org/web/20230608123410/https://westfax.com/broadcast-fax-faq/, captured June 8, 2023) (Emphasis added). The statements on WestFax's website prior to WestFax Defendants being made aware of this lawsuit directly contradict Clark Declarations at ¶ 10. Clark directed these changes to WestFax's website as a direct result of being made aware of this litigation. WestFax Defendants' claims about the contents of WestFax's website as it exists now, as opposed to when this case was filed, are, at best, disingenuous.

Separately, WestFax Defendants' customers are unable to handle **merge** requests or other specialized requests. Each of the 8,579 Coast Credit Faxes at issue in this case was the subject of a merge request as it contains merged content specific to the recipient data provided by Matheson. Therefore, Clark Declarations at ¶ 10 is false for every Coast Credit Fax at issue. Clark Declarations at ¶¶ 9 and 11 are false because Clark directed Matheson to provide the fax numbers at issue to Coast Credit.

## IV.     CONCLUSION

WHEREFORE, Plaintiff respectfully requests the Court Deny the Motions to Dismiss filed by WESTFAX, INC. (Doc. 39), DUCK DIVE COMMUNICATIONS LLC d/b/a JBlast (Doc. 38), and BARRY CLARK (Doc. 37); and such other relief this Court deems appropriate under the circumstances.

Respectfully submitted,

/s/Ross M. Good_____
Ross M. Good, Esq.
Loftus & Eisenberg, Ltd.

161 N. Clark, Suite 1600
Chicago, Illinois 60601
direct: (786) 539-3952
ross@loftusandeisenberg.com
**Attorney for Plaintiff ASTRO COMPANIES, LLC.**

Dated: April 2, 2024

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 2, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of record.

<u>/s/ Ross M. Good</u>