IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1: 23-cv-02328-SKC-MEH

ASTRO COMPANIES, LLC,

    Plaintiff,

v.

WESTFAX INC,
DUCK DIVE COMMUNICATIONS LLC, d/b/a JBlast,
BARRY CLARK,
CHAD MATHESON, and
JOHN DOES 1-10,

    Defendants.

---

**DEFENDANTS BARRY CLARK'S, WESTFAX, INC.'S, AND DUCK DIVE COMMUNICATIONS, LLC'S COMBINED REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(2) AND 12(b)(6)**

---

COMES NOW, Defendant Barry Clark, an individual ("Mr. Clark"), Defendant Westfax, Inc. ("Westfax"), and Defendant Duck Dive Communications, LLC d/b/a ("JBlast") (Mr. Clark, Westfax, and JBlast, collectively, "Westfax Defendants"), by and through their counsel Montgomery Little & Soran, PC, and hereby respectfully submit this combined reply in support of their respective motions to dismiss (Dkt. 37-39, "Motions to Dismiss") the claims brought against them in Plaintiff Astro Companies, LLC's ("Astro") December 21, 2023 First Amended Complaint (Dkt. 10, "FAC"), pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6). In support thereof, the Westfax Defendants state as follows (this "Reply"):

1

# REPLY

### A. THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER MR. CLARK OR JBLAST.

As a preliminary matter, Astro's combined response to the Westfax Defendants' Motions to Dismiss (Dkt. 44, "Response") confuses subject matter jurisdiction with personal jurisdiction. Each of Mr. Clark's and JBlast's Motions to Dismiss (Dkt. 37 and 38, respectively) requests dismissal, in part, for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) because neither Mr. Clark nor JBlast have sufficient minimum contacts with the state of Colorado.

"Personal jurisdiction" is "the power to subject a particular defendant to the decisions of the court." *Stone's Farm Supply, Inc. v. Deacon,* 805 P.2d 1109, 1113 (Colo. 1991). A person's right to due process protects such individual from being subject to a court judgment in a forum with which such person has no meaningful contacts, ties, or relations. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 (1985). Subject matter jurisdiction, on the other hand, is the "court's authority to hear and determine the particular type of case before it." *People v. Gilliland,* 769 P.2d 477, 480 (Colo. 1989). Federal courts obtain subject matter jurisdiction by statute either through federal question jurisdiction (28 U.S.C. § 1331) or diversity jurisdiction (28 U.S.C. § 1332). At this time, the Motions to Dismiss submitted by the Westfax Defendants do not seek to dismiss this case for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

The only analysis relevant to personal jurisdiction here is whether this Court has specific personal jurisdiction over Mr. Clark and JBlast. Here, Mr. Clark and JBlast do not have sufficient minimum contacts with the state of Colorado for this Court to exercise specific personal jurisdiction over either party. An inquiry into specific personal jurisdiction relies in part on a minimum contacts analysis that focuses on the "relationship among the defendant, the forum, and the litigation." *Walden v. Fiore,* 571 U.S. 277, 283-84 (2014). A defendant's relationship "with a

plaintiff or third-party, standing alone, is insufficient basis for jurisdiction." *Id.* at 286. "Due process requires that a defendant be hauled into court in a forum State based on his own affiliation with the State, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State." *Walden,* 571 U.S. at 286 (citing *Burger King*, 471 U.S. at 475) (internal quotations omitted).

    *(1)* **This Court does not have Specific Personal Jurisdiction over Mr. Clark**.

As admitted by Astro in its Response, Mr. Clark "conducts duties on behalf of Westfax and JBlast *from California*," not Colorado, and "runs all aspects of Westfax and JBlast *from California*." *See* Resp. (Dkt. No. 44), pp. 7-8 (emphasis added). Astro further states that Mr. Clark directed a Westfax employee who might be in Colorado to take certain actions. However, the "minimum contacts" analysis looks to Mr. Clark's contacts with the forum state itself in his personal capacity, not any contact with persons who may reside there. *Walden,* 571 U.S. at 285. Directing an employee of Westfax in his capacity as an officer from California, where such employee happens to be in Colorado, is not sufficient to establish the minimum contacts necessary to conclude that Mr. Clark purposefully availed himself of Colorado in is *individual capacity*.

Astro also attempts to impute personal jurisdiction to Mr. Clark by stating he had an in-person meeting with "Coast Credit's principal," without stating where this meeting took place or identifying the mysterious principal. Resp. (Dkt. 44), p. 9. Further, Astro states that jurisdiction is proper because the tortious conduct alleged purportedly occurred in Colorado. Resp. (Dkt. 44), p. 7. However, none of these statements comes with evidence sufficient to prove that Mr. Clark has the requisite minimum contact with Colorado.

In fact, Coast Credit appears to be a Minnesota company—not a Colorado company. *See, generally,* Ex. B1 to FAC (Dkt. 10.2). The FAC does not allege that this purported meeting

occurred in Colorado, and even if it did, one meeting would be too tenuous of a connection to constitute purposeful availment of Colorado. Finally, Astro is a Florida company domiciled in Florida (FAC ¶ 5). If the allegations regarding the alleged "tortious conduct" are to be taken as true, such conduct is alleged to have occurred in Florida where Astro and its fax lines are located—not Colorado.

The fact remains that Mr. Clark does not live in Colorado, does not work in Colorado, and has not engaged in any specific "suit-related conduct" in his individual capacity that would create a substantial connection between Mr. Clark and Colorado. *Walden,* 571 U.S. at 285. The FAC is devoid of any facts to show that Mr. Clark purposefully availed himself of Colorado. Thus, this Court should dismiss Mr. Clark for a lack of personal jurisdiction.

*(2)* ***This Court does not have Specific Personal Jurisdiction over JBlast***.

Astro also attempts to impute personal jurisdiction unto JBlast by stating that Westfax and JBlast are the same. But the facts, even by Astro's own admission, do not support this conclusion. JBlast and Westfax are different entities that offer different services. Astro provides exhibit 1 to its Response (Dkt. 44.1), which is an advertisement for Westfax's services dated from 2015, in an attempt to prove that Westfax and JBlast offered the same services in 2022. But, JBlast was acquired after 2015, and as Astro's exhibit 2 to its Response proves (Dkt. 44.2), Westfax generally transitioned away from fax broadcasting.

Further, the location of the infrastructure is irrelevant to the personal jurisdiction analysis. What matters are the parties and their purposeful, directed contacts to the citizens of a forum state. A computer or server is not a citizen of a state, nor an active participant in the conduct of the parties. Even if it was, there is no identifying information on the faxes contained in the exhibits to the FAC that show where the faxes came through. In fact, at the time the alleged faxes were sent,

4

the Westfax defendants had infrastructure in at least two states—Colorado and California.

The fact remains that JBlast is a Delaware company. The facts alleged in the FAC are not sufficient to prove minimum contacts between JBlast and Colorado. This Court does not have personal jurisdiction over JBlast and should dismiss accordingly.

B. <u>A</u>STRO <u>F</u>AILS TO <u>S</u>TATE A <u>C</u>LAIM BY <u>W</u>HICH <u>R</u>ELIEF <u>C</u>OULD <u>B</u>E <u>G</u>RANTED.

### *(1)* **Astro lacks the standing to bring a TCPA claim and the intended recipients appear to be existing customers of the sender.**

"[A] statute ordinarily provides a cause of action only to plaintiffs whose interests fall within the…interest protected by the law invoked." *Bank of Am. Corp. v. City of Miami, Fla.,* 137 S. Ct. 1296, 1302 (2017) (internal quotations omitted). The Telephone Consumer Protection Act, 47 U.S.C. §227, *et. seq.* ("<u>TCPA</u>"), protects the intended recipient of an unsolicited fax. *See Kopff v. World Research Group, LLC,* 568 F.Supp.2d 39, 40-42 (D.D.C. 2008). "[I]t is the consumer to whom the content of a fax or efax is directed that is the recipient." *In the Matter of WestFax, Inc. Pet. For Consideration and Clarification,* 30 F.C.C. Rcd. 8620, ¶ 12 (FCC 2015) (internal quotations omitted). A person that "convert[s] faxes to email are not "recipients" of such faxes under the TCPA because they are not the intended audience for the fax." *Id.*

An examination of the subject faxes attached to the FAC shows that the faxes are intended for specific recipients as addressed by their "Client ID" and a personal greeting—these recipients <u>are not Astro</u>. *See, e.g.,* Exhibit B-1 to FAC (Dkt. 10.2) p. 2, ("Client ID #: 6517847930…Mulligan Real Estate."). By Astro's own admission, it "provides online fax services to its customers" by serving as an intermediary between the fax sender and the recipient. FAC ¶ 25; *see also* Astro Companies' webpage ("[I]nbound service provides your subscriber with their own fax number…which accepts faxes and then converts them…and delivers them to the subscriber by

5

email.")[1]. Astro is not the intended recipient here, and cannot bring a claim under the TCPA because it is an intermediary that transmits the fax to the final destination—the actual intended recipient. *See, e.g., Cellco Partn. V. Wilcrest Health Care Mgt. Inc.,* No. CIV.A. 09-3534 MLC, 2012 WL 1638056 (D.N.J. May 8, 2012); *J2 Glob. Commun. Inc. v. Protus IP Sols.,* No. CV 06-00566 DDP-AJWX, 2010 WL 9446806, at *7 (C.D. Cal. Oct. 1, 2010). The lack of standing alone is a fatal flaw, and this case should be dismissed accordingly.

Additionally, the existence of a pre-assigned customer ID and the personalized message on the subject faxes not only confirm that Astro is not the intended recipient, but appear to target existing clients of the apparent sender—Coast Credit. The subject faxes appear to be addressed to different client IDs and contain a customized "approved line" of credit and "applied rate" of interest. *Contrast* Exhibit B-1 to FAC (Dkt. 10.2) at p. 2 *with* p. 3. It is not a violation of the TCPA to send faxes to existing or prior customers. *See Imhoff Investment, L.L.C. v. Alfoccino, Inc.,* 792 F.3d 627, 634 (6th Cir. 2015) (It is "unlawful...to send…an **unsolicited advertisement unless the sender has an established business relationship with the recipient**.") (emphasis added).

The exhibits attached to the FAC, by themselves, seem to offer prima facie evidence that the apparent sender has an existing relationship with the intended recipients. Thus, because the FAC also fails to overcome the evidence apparent in its own exhibits, the FAC fails to state a claim under which relief could be granted and must therefore be dismissed.

### *(2) Without a named sender, there can be no liability of the fax broadcaster.*

Under the TCPA, "direct liability attaches to the entity whose goods are advertised as opposed to the fax broadcaster." *Imhoff,* 792 F.3d at 634. The fax broadcaster is only liable if it was highly involved with the sender (47 C.F.R. §64.1200(a)(4)(vii)), meaning that the sender's

---

[1] https://astrocompanies.com/carrier-services/smartmail-fax/

conduct must first constitute a violation of the TCPA for the fax broadcaster to be liable. But, the FAC does not name a sender, nor has a sender been served in this case. It appears that Coast Credit may be the sender, but the Westfax Defendants have no record of a customer by that name.

Further, the FAC and the Response do not provide any evidence or allegations that tie Coast Credit or the subject faxes to the Westfax Defendants beyond threadbare allegations. There is no contract, no order confirmation, or anything else that shows Coast Credit (or the unnamed sender) used Westfax or JBlast. It is notable that each user of the Westfax Defendants' systems must agree to a customer agreement whereby the customer indemnifies the Westfax Defendants and agrees to comply with the TCPA. *See, e.g.,* screenshot of required assent to JBlast's Customer Agreement by a prospective customer, **Exhibit A**, attached; *see also* Customer Agreement, Section K, https://www.jblast.com/customer-agreement. Because there is no sender named or served here, there can be no liability for the Westfax Defendants. Thus, the FAC should be dismissed.

### (3)  *There is no evidence of high involvement by Westfax and JBlast in the subject faxes.*

There are no allegations in the FAC (beyond barebones conclusory allegations) that identify through which fax broadcaster—i.e., Westfax, JBlast, or a third-party fax broadcaster—the alleged faxes were sent. There is no code, no fax number or confirmation sheet, nor any other information present on the subject faxes that identify or tie the faxes to Westfax's or JBlast's service. Astro presents no information about the sender's use of Westfax or JBlast (i.e., confirmation communications, contracts, etc.) that would otherwise tie Westfax and JBlast to either the sender or to the subject faxes.

In reviewing the faxes, for example, some state "pleaseunsubscribemyfax.com" as an opt-out notice at the bottom of the page. *See, e.g.,* Dkt. 10.2, p. 3. Myfax.com is a competing fax broadcaster. While the Westfax Defendants cannot tell whether the subject faxes were sent through

7

Myfax.com instead of through the Westfax Defendants, this is an illustration of the problem Astro has—there is no information identifying or tying the Westfax Defendants to the subject faxes.

Astro also attempts to show that Westfax and/or JBlast had a high degree of involvement in the creation of the faxes in order to impute liability to Westfax and/or JBlast. FAC ¶ 13, 16; *see* 47 C.F.R. §64.1200(a)(4)(vii) (stating that a fax broadcaster is only liable where its activities constitute "a high degree of involvement."). Astro attempts to prove this in a number of ways, each of which is insufficient to impute liability to Westfax and JBlast.

First, Astro alleges that Westfax and/or JBlast had a high degree of involvement in the creation of the faxes because it conducted a 'mail merge.' A mail merge is an automated process that uses provided data to personalize and send documents to multiple recipients. *See https://www.techopedia.com/definition/1686/mail-merge.* In the case of a fax broadcaster, a sender would upload a template fax and then upload a list of contacts. A program will "mail merge" the template with the list, so the resulting letter will have a personalized ID or contact information. *Id.* But the key here is that the process is automatic, and the data (the template and the list of contacts) is supplied by the Westfax Defendants' customer—there is no involvement by the Westfax Defendants in the creation of the fax template or the customer list.

Second, Astro provides exhibits in its Response to purportedly show the Westfax Defendants' involvement in the creation of the subject faxes. But the evidence supplied by Astro leads to the opposite conclusion—that Westfax and/or JBlast's involvement is passive in nature, and that the customer is responsible for the inputs. For instance, exhibit 1 (Dkt. 44.1) shows a proposal given to a customer of Westfax. But the proposal in exhibit 1 does not offer any services that would assist or direct the creation of content for a fax, or the identification of a recipient— two things that would otherwise indicate 'involvement' by Westfax.

8

Also, exhibit 2 (Dkt. 44.2) shows that Westfax transitioned a majority of its fax broadcasting business to JBlast. Here, the customer service representative sent the unnamed customer his or her own files for use and upload in a non-Westfax system (i.e., JBlast). If JBlast and Westfax were the same, then Westfax would not need to provide the customer with their own assets in the transition between the two companies. Further, the "All Removals" document appears to be a list provided and maintained by the customer—it is not a recipient list provided by Westfax. When a customer uploads a fax and provides recipient numbers into Westfax's or JBlast's system, the customer provided list is used to automatically check and remove matching recipient numbers provided by the customer for the to-be-sent fax. This is not a 'high degree of involvement' because it is an automated process wholly dependent upon customer provided information.

Likewise, exhibit 4 (Dkt. 44.4) contains customer service correspondence but otherwise shows nothing of the alleged Westfax Defendants' involvement in the content creation of, or provision of a recipient list for, the subject faxes. Exhibit 5 (Dkt. 44.5) also shows customer service correspondence by a representative of JBlast to confirm that the unnamed customer's order was fulfilled. But exhibit 5 similarly contains no evidence that JBlast was involved in the creation of the fax's content or the targeting of any recipients for said fax. Exhibits 6 (Dkt. 44.6) and 7 (Dkt. 44.7) are also irrelevant because they are dated from 2010 and 2011, respectively, are not associated with Westfax, and were created prior to Westfax's acquisition of JBlast. And, again, none of the exhibits attached to the FAC identify which fax broadcaster was used by the sender.

In short, nothing provided or alleged by Astro is sufficient to show that the subject faxes are associated with the Westfax Defendants' systems, or that the Westfax Defendants deviated from decades of practice to suddenly become highly involved in the creation of fax content and the targeting of particular recipients. Astro's "[t]hreadbare recitals of the elements of a cause of

9

action, supported by mere conclusory statements, do not suffice," and, thus, the FAC should be dismissed as to the Westfax Defendants. *Ashcroft v. Iqbal,* 566 U.S. 662, 678 (2009).

### *(4)* **Personal liability cannot attach to Mr. Clark.**

"Personal liability under the TCPA" arises where "the individual was a 'sender'" or "had direct, personal participation in or personally authorized the conduct found to have violated the statute." *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Medical Sopplies, Inc.,* 961 F.3d 942, 946 (7th Cir. 2020) (internal citation omitted).

The FAC does not include allegations, and the exhibits to the Response and the FAC do not show, that Mr. Clark had any personal participation in the creation of the subject faxes content or was to benefit from the advertisements contained therein. One meeting with the unnamed sender is not enough to show a degree of personal involvement that goes beyond Mr. Clark's role at Westfax and JBlast. The allegations and the exhibits are devoid of any showing that Mr. Clark was to personally benefit from use of the services advertised. Thus, there can be no claim against Mr. Clark under the TCPA, and the case should be dismissed as to Mr. Clark for failure to state a claim.

## CONCLUSION

Mr. Clark and JBlast have no connection or contact to Colorado—thus, this Court does not have personal jurisdiction over Mr. Clark and JBlast. Accordingly, this case should be dismissed as to Mr. Clark and JBlast for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Further, Astro, a party without standing, has brought a threadbare complaint against the Westfax Defendants without naming or serving the alleged sender, or providing any evidence that substantiates the claims that the Westfax Defendants were highly involved in the creation and transmission of the subject faxed. Thus, this case should be dismissed against all Westfax Defendants for failure to state a claim under the TCPA pursuant to Fed. R. Civ. P. 12(b)(6).

Dated: April 19, 2024.

Respectfully submitted,

MONTGOMERY LITTLE & SORAN, PC

*s/ James C. Taravella*
Nathan G. Osborn, #38951
Alyson S. Evett, #52400
James C. Taravella, #55179
5445 DTC Parkway, Suite 800
Greenwood Village, Colorado 80111
E-mail:  nosborn@montgomerylittle.com
 aevett@montgomerylittle.com
 jtaravella@montgomerylittle.com

**Attorneys for Defendants Westfax INC, Duck Dive Communications LLC, d/b/a JBlast, and Barry Clark**

## CERTIFICATE OF SERVICE

      I hereby certify that on April 19, 2024, I electronically filed the foregoing DEFENDANTS BARRY CLARK'S, WESTFAX, INC.'S, AND DUCK DIVE COMMUNICATIONS, LLC'S COMBINED REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(2) AND 12(b)(6) with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of record.

LOFTUS & EISENBERG, LTD.
Ross M. Good, Esq.
161 N. Clark, Suite 1600
Chicago, IL 60601
direct: (786) 539-3952
ross@loftusandeisenberg.com
***Attorney for Plaintiff Astro Companies, LLC***

                                                  *s/ James C. Taravella*
                                                  James C. Taravella, Attorney