**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-02328-SKC-MEH

ASTRO COMPANIES, LLC,

      Plaintiff,

      v.

WESTFAX, INC,
DUCK DIVE COMMUNICATIONS LLC d/b/a JBlast,
BARRY CLARK,
CHAD MATHESON, and
JOHN DOES 1-10

      Defendants.

---

**ASTRO COMPANIES, LLC'S RESPONSE TO**
**CHAD MATHESON' S MOTION TO DISMISS**

---

COMES NOW, Plaintiff ASTRO COMPANIES, LLC. ("Plaintiff" or "Astro"), by and through its undersigned counsel, and hereby respectfully requests this Court deny the Motion to Dismiss filed by CHAD MATHESON ("Matheson"). (Doc. 54). In opposition to said Motion, Plaintiff states as follows:

## I.    INTRODUCTION

Matheson fundamentally misstates the business Plaintiff is in and the purpose Plaintiff has for having the fax numbers at issue. Simply put, Plaintiff offers telephone numbers to its customers for immediate usage for a variety of services. The phone numbers that received the faxes at issue in this case are available to be leased to customers but during the relevant time period were not leased. The allegations of the complaint must be accepted as true and Matheson contradicts the allegations by arguing contrary facts about what Plaintiff's business is.   If characterized as a 12(b)(1) factual attack, then the contradictory factual argument is procedurally correct but unsupported. No matter how it is framed the Motion fails and the thousands of statutory violations must be remedied.

Matheson's practices, as alleged in Plaintiff's First Amended Complaint (Doc. 10, "FAC"), consume Plaintiff's capacity to operate its business. This harm was specifically contemplated in the drafting of the Telephone Consumer Protection Act ("TCPA"). 47 USC § 227. Matheson's statement that "Astro has no standing to bring these claims" is false. (Doc. 54, "Matheson MTD" at 1). Defendant's ongoing illegal conduct poses a threatens the viability of Plaintiff's small business.

Plaintiff seeks to arrest and punish Matheson for his illegal conduct executed in

Colorado. Matheson allegedly acting at the direction of one of his co-defendants does not absolve Matheson of liability for statutory damages totaling millions of dollars.

## II.   PLAINTIFF STATES A CLAIM UPON WHICH RELIEF CAN BE GRANTED AGAINST MATHESON

### a.   12(b)(6) Legal Standard

"A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint." *Reuter v. City of Montrose Police Department*, 2024 U.S. Dist. LEXIS 52845, at *1-2 (D. Colo. Mar. 25, 2024) (citing *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Factual allegations must be enough to raise the right to relief above the speculative level." *Id.* 1136 (10th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"The federal statute provides a private right of action to persons who have incurred monetary damages as a result of violations of the TCPA, and such actions may be brought in either state []or federal court." *Makowski v. First National of Nebraska, Inc.*, 2013 U.S. Dist. LEXIS 26900, at *20 (D. Colo. Feb. 6, 2013) citing *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012).

The TCPA prohibits the use of "any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. 227(b)(1)(C). The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." *Id.* § 227(a)(5). The Federal Communications Commission ("FCC") regulations define "sender" as "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(11). The TCPA creates a private right of action for any person or entity that receives an advertisement in violation of the Act. *Id.* Plaintiff alleges the Coast Credit faxes and the Fax Police Fax violate the TCPA and ask this Court to hold Matheson liable for his direct role.

### b. Plaintiff states a claim against Matheson.

Matheson correctly explains, "[a] fax broadcaster may be found liable for a sender's TCPA violation 'if it demonstrates a high degree of involvement in, **or** actual notice of, the unlawful activity and fails to take steps to prevent such facsimile transmissions.'" (Matheson Mtn at 2) (quoting 47 C.F.R. §64.1200(a)(4)(vi), emphasis added). Plaintiff has specifically alleged Matheson had a high degree of involvement and actual notice of an illegal use with respect to the Coast Credit faxes. (FAC at ¶¶ 136-138, 174-189). Plaintiff need not make such allegations of "of a high degree of involvement or actual notice of an illegal use" with respect to The Fax Police Fax at this time because Plaintiff alleges the Fax

Police Fax put Matheson on "actual notice" which is sufficient to be held liable independent of whether Plaintiff is able to demonstrate that Matheson had a "high degree of involvement."

"[T]he FCC has issued orders and rules finding that a fax broadcaster demonstrates a high degree of involvement in the transmission of fax advertisements when it 1) supplies the fax numbers used to transmit the advertisement or a source of fax numbers; 2) makes representations about the legality of faxing to those numbers; 3) advises a client about how to comply with the fax advertising rules; **or** 4) reviews, assesses, or determines the content of a fax message." *Levine Hat Co. v. Innate Intelligence, LLC*, 538 F. Supp. 3d 915, 921 (E.D. Mo. 2021) quoting *Paldo Sign & Display Co. v. Unified Mktg., LLC*, 2017 U.S. Dist. LEXIS 34416, 2017 WL 951313, at *7 (N.D. Ill. Mar. 10, 2017) citing *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of* 1991 (Report and Order and Third Order on Reconsideration), 21 FCC Rcd. 3787, 3808 (Apr. 6, 2006); *Rules and Regulations Implementing the Tel. Consumer Prot. Act ("TCPA") of 1991*, 68 Fed. Reg. 44144, 44169 (July 25, 2003))) (Emphasis added). Plaintiff's First Amended Complaint specifically alleges that Matheson engaged in number 1. (FAC at ¶¶ 174-188). Matheson's liability is alleged because of his direct conduct and not because of his employment (or independent contractor status) in relation to his co-defendants. Matheson allegedly provided the database of fax numbers, that include those at issue in this case, to Coast Credit using his non-WestFax email account. (FAC at ¶¶ 177-178, 182). The database was so large it needed to be provided using a filesharing service, Matheson selected Dropbox.com for this task. (FAC at ¶¶ 179-

180). In compiling the database, Matheson allegedly harvested the fax numbers from sources including other clients of his co-defendants, WestFax and JBlast. (FAC at ¶¶ 181, 183-184).

Plaintiff alleges that Matheson, at the direction of Clark, provided Coast Credit access to approximately 6,229,596 fax numbers to send Coast Credit junk faxes to. (FAC at ¶ 168). These 6,229,596 fax numbers included Plaintiff's fax numbers. (FAC at ¶ 182). Matheson is a Defendant in this matter because of work he performed on behalf of Coast Credit and not merely as a subordinate to Defendant Barry Clark. If merely being a subordinate of Defendant Barry Clark was enough to hold someone liable, as Matheson suggests (Matheson MTD at 3-4, 13-15), then all persons identified as employees acting at the direction of Defendant Barry Clark could be co-defendants. (Doc. 41, Scheduling Order at 6). This strawman argument is absurd on its face as none of the other subordinates of Defendant Barry Clark "1) supplie[d] the fax numbers used to transmit the advertisement or a source of fax numbers; 2) ma[de] representations about the legality of faxing to those numbers; 3) advise[d] a client about how to comply with the fax advertising rules; **or** 4) review[ed], assess[ed], or determine[ed] the content of a fax message." *Levine Hat Co.*, 538 F. Supp. at 921.

### III.   PLAINTIFF HAS STANDING TO ASSERT THE CLAIMS ALLEGED

#### a.   Defendant improperly frames this fact-intensive affirmative standing argument as a 12(b)(6) Motion but it is properly characterized as a 12(b)(1) Motion.

Article III of the Constitution confines the federal judicial power to deciding "[c]ases"

and "[c]ontroversies." U.S. Const. art. III, § 2. This constitutional limitation requires "a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions." *Carney v. Adams*, 592 U.S. 53, 58, 141 S. Ct. 493, 208 L. Ed. 2d 305 (2020). "The doctrines of standing and mootness aim to ensure federal courts stay within Article III's bounds throughout the litigation." *Rio Grande Foundation v. Oliver,* 57 F.4th 1147, 1159-60 (10th Cir 2023). To establish Article III standing, a plaintiff must demonstrate "a concrete and particularized injury that is fairly traceable to the challenged conduct[] and is likely to be redressed by a favorable judicial decision." *Carney*, 592 U.S. at 58 *(quoting Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013)). And a case becomes moot "[w]hen it becomes impossible for a court to grant effective relief*." Rio Grande*, 57 F.4th at 1165 *(quoting Kan. Jud. Rev. v. Stout*, 562 F.3d 1240, 1246 (10th Cir. 2009)).

A Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction can take two forms: a facial or a factual attack. *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020) Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss a claim for lack of subject-matter jurisdiction, mounting either a facial or factual attack. A facial attack assumes the allegations in the complaint are true and argues they fail to establish jurisdiction. *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n.4 (10th Cir. 2015) (*citing Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995)). A factual attack goes beyond the allegations in the complaint and adduces evidence to contest jurisdiction. *Id.* (*citing Holt*, 46 F.3d at 1002). That's what Matheson tried to do here.

When a defendant brings a factual attack, a district court has "wide discretion to

allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts.*" Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) (quoting Holt, 46 F.3d at 1003). The court's exercise of such discretion does not convert a Rule 12(b)(1) motion into a summary judgment motion unless "resolution of the jurisdictional question is intertwined with the merits." *Holt*, 46 F.3d at 1003 (*citing Wheeler v. Hurdman*, 825 F.2d 257, 259 & n.5 (10th Cir. 1987); *Redmon v. United States*, 934 F.2d 1151, 1155 (10th Cir. 1991)).

### b. Facts Supporting Standing

Plaintiff was the owner of the fax numbers at issue when the faxes at issue were received, and was the end user. (Declaration of Mike Ray attached hereto as Exhibit A, "Plaintiff Decl." ¶ 1). Plaintiff, not a non-party, is in possession of the actual faxes received on the telephone numbers that it owned.  (Plaintiff Decl. ¶¶ 2-3). Plaintiff owns and operates the resources (including but not limited to server hardware, software and telephone services) upon which the faxes at issue were received which all have the capacity to print. (Plaintiff Decl. ¶¶ 4-5). Plaintiff is not now and never has been a subscriber to any online fax service.  (FAC at ¶ 24; Plaintiff Decl. ¶ 6). Plaintiff does not now and never has engaged in mass fax broadcasting of any kind.  (Plaintiff Decl. ¶ 7). Plaintiff's business is negatively impacted when a party sends thousands of faxes to numbers owned by Plaintiff because its resources fill up and legitimate faxes cannot be received.  (Plaintiff Decl. ¶ 8). Finally, Plaintiff did not provide prior express invitation or permission to be sent the faxes at issue. (FAC at ¶¶ 20, 41, 45).

7

Plaintiff alleges that Matheson provided the database of fax numbers to Coast Credit which was subsequently used by WestFax Defendants to send the faxes at issue. (FAC at ¶¶ 177-182). Plaintiff alleges that Matheson discussed targeting of the faxing at issue with Coast Credit. (FAC at ¶ 185).

### c. This Court has Jurisdiction to remedy the harm caused to Plaintiff.

Plaintiff alleged violations of the TCPA sufficient to bring its TCPA claims against Matheson and his co-Defendants. Congress may, "enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute." *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973). Thus, once "a statute confers new legal rights on a person, that person will have Article III standing to sue where the facts establish a concrete, particularized, and personal injury to that person as a result of the violation of the newly created legal rights." *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 781 F.3d 1245, 1251 (11th Cir. 2015). Courts across the country have "found that through the TCPA, Congress intended to remedy a number of problems associated with junk faxes, including… he difficulty of the recipient's telephone line being tied up, and the stress on switchboard systems. Thus, viewing or printing a fax advertisement is not necessary to suffer a violation of the statutorily-created right to have one's phone line and fax machine free of the transmission of unsolicited advertisements." *IMHOFF Investment, L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 633 (6th Cir. 2015) (citing *American Copper & Brass, Inc. v. Lake City Industrial Products*, 757 F.3d 540 (6th Cir. 2014)); *See also Ace American Insurance Co. v. Dish Network, LLC*, 173 F. Supp. 3d 1128, 1135 (D. Colo. 2016)

("unsolicited fax advertising interferes with company switchboard operations and burdens the computer networks") (quoting *Missouri ex rel. Nixon v. Am. Blast Fax, Inc.*, 323 F.3d 649, 655 (8th Cir. 2003)). In part, the TCPA was created to address "the concerns expressed by Congress, statutory damages are also meant to account for unquantifiable losses, such as the **business interruption** and time wasted on the unwanted fax." *Green v. Anthony Clark International Insurance Brokers, Ltd.*, 2010 U.S. Dist. LEXIS 8744, at *17 (N.D. Ill. Feb. 1, 2010) (citing H.R. Rep. 102-317, at 10-13 (1991)) (Emphasis added).

Matheson's suggestion that Plaintiff is seeking statutory damages only because of "this volume of faxes" is entirely accurate. (Matheson MTD at 9). But for Matheson compiling a database of target phone numbers to send faxes to that included Plaintiff's without Plaintiff's prior express invitation or permission, this case would not have been brought. (FAC at ¶¶ 41, 177-182). In addition to the cases above being brought by businesses alleging violations of the TCPA, here are just a few cases where the businesses filed class action TCPA cases seeking millions of dollars of statutory damages for a similar "volume of faxes": (1) *Sandusky Wellness Ctr. v. MedTox Scientific, Inc.*, 821 F.3d 992 (8th Cir. 2016), (2) *Holtzman v. Turza*, 728 F.3d 682 (7th Cir. 2013), (3) *Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, 757 F.3d 540 (6th Cir. 2014), (4) *Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119 (6th Cir. 2016), and (5) *Tech Instrumentation Inc. v. Eurton Electric Co.*, 2021 U.S. Dist. LEXIS 170805 (D. Colo. Sep. 9, 2021) (Defendant WestFax was the sender of the faxes at issue in that case). This case is not being brought as a class action but that doesn't remove

Plaintiff's standing to bring this matter in this forum.

Matheson argues without citation that "Astro was not the intended recipient of the faxes at issue." (Matheson MTD at 6). Matheson allegedly provided the target list which included Plaintiff's fax numbers so only Matheson would know who the "intended recipient of the faxes at issue." (FAC at ¶¶ 178-188). Put simply, the phone numbers that received the faxes at issue were not assigned to any subscriber nor customer during the relevant time period. (FAC at ¶¶24-26, 30; Plaintiff Decl. ¶¶ 1-4, 6). It is precisely for this reason that Matheson is properly a Defendant in this matter.

Contrary to statutory language, legislative history, and caselaw dating back to when President George H.W. Bush signed the TCPA into law in 1991, Matheson succinctly summarizes his argument as to why it believes Plaintiff lacks standing as follows: "Astro has no statutory standing to bring these claims under the TCPA because it is neither a consumer nor the intended audience of the faxes it complains of, and its interests fall outside of the zone of interests protected by the TCPA." (Matheson MTD at 5). Matheson supports his argument with a citation to *Bank of America Corp. v. City of Miami*, 581 U.S. 189, 189 (2017). (*Id.* at 4-5). Unsurprising, Matheson neglects to mention that the case he is citing is one in which the City of Miami sued Bank of America for violations of the Fair Housing Act ("FHA") which "defines an 'aggrieved person' as 'any person who' either 'claims to have been injured by a discriminatory housing practice' or  believes that such an injury 'is about to occur,'" *Bank of America Corp. v. City of Miami*, 581 U.S. 189, 190 (2017) (quoting 42 U. S. C. §3602(i)). The FHA has no relation to this case and the TCPA does not define "aggrieved

person" as the FHA does for purposes of a standing determination. Plaintiff brings this case because Matheson presents an existential threat to Plaintiff's ability to operate a functioning business. (Plaintiff Decl. ¶¶ 7-8). It is precisely for this reason that the TCPA was enacted.

Matheson goes on to cite several TCPA cases that are similarly inapposite. For example, Matheson cites a case where Verizon "attempted to bring claims for TCPA violations against…a company that had placed robocalls to millions of **Verizon's subscribers.**" (Matheson MTD at 6) (citing *Cellco Partnership v. Wilcrest Health Care Management,* No. 09-3534 (MLC), 2012 U.S. Dist. LEXIS 64407 (D.N.J. May 8, 2012)). In the next paragraph Matheson argues that "Just like in Verizon, Astro is attempting to assert TCPA violations on its own behalf instead of on behalf of its online fax service subscribers and customers." (Matheson MTD at 7). The court Matheson relies on says "the TCPA allows only one recovery per each allegedly illegal call." *Cellco Partnership v. Wilcrest Health Care Management*, No. 09-3534 (MLC), 2012 U.S. Dist. LEXIS 64407, at *24 (D.N.J. May 8, 2012). Matheson asks this Court to find that there is no recovery for faxes sent to Plaintiff. Matheson's position is untenable.

Matheson similarly fails to acknowledge the binding Tenth Circuit caselaw that directly addressed this issue in the context of TCPA fax cases. Specifically, "TCPA claims are unassignable because they are in the nature of personal-injury, privacy claims." *US Fax Law Center, Inc. v. Ihire, Inc.*, 476 F.3d 1112, 1120 (10th Cir. 2007). As explained above, the phone numbers that were sent the faxes at issue were not assigned to any subscriber or

11

customer of Astro. (Plaintiff Decl. ¶¶ 1-4). This Court should follow binding Tenth Circuit precedent that is directly on point.

Similarly, Matheson mischaracterizes *Leyse v. Bank of Am.*, No. 09–7654, 2010 WL 2382400, at *4 (S.D.N.Y. June 14, 2010) (holding that only the intended recipient of a telemarketing call could pursue TCPA claim)" for the same reason. (Matheson MTD at 5). Specifically, Matheson fails to mention to this Court that the court in *Leyse* said:

> Under the statute, a business is permitted to send a fax or phone call with a prerecorded message to persons who have given prior express consent or with whom the business has an existing business relationship. See 47 U.S.C. § 227(b)(1)(B); 47 C.F.R. § 64.1200(a)(2)(iv). When a business places such a call or sends such a fax, it does not know whether the intended recipient or a roommate or employee will answer the phone or receive the fax. If the business is liable to whomever happens to answer the phone or retrieve the fax, a business could face liability even when it intends in good faith to comply with the provisions of the TCPA.
> …
> The face of the statute itself permits prerecorded calls when a business has the prior express consent of the "called party." 47 U.S.C. § 227(b)(1)(B). It is apparent that in this case Leyse was not the called party, although Leyse answered the telephone.

*Leyse v. Bank of America*, 2010 U.S. Dist. LEXIS 58461, at *12-13, 15 (S.D.N.Y. June 14, 2010). Applying *Leyse* standard here, Matheson allegedly provided the fax numbers and WestFax Defendants sent the faxes on behalf of Coast Credit so Matheson would be in the best position to know who he believed provided prior express invitation or permission to be sent the faxes at issue; in *Leyse* there was someone who provided consent while in this matter it is alleged that Plaintiff did not provide any. (FAC at ¶¶ 41, 45, 99 ) (See also *j2 Global Communs., Inc. v. Protus IP Solutions*, No. CV 06-00566 DDP (AJWx), 2010 U.S. Dist. LEXIS 145369, at *19 (C.D. Cal. Oct. 1, 2010) (Rejecting the theory that "a fax

advertisement passing through [a plaintiff's] network would be 'unsolicited' even if the addressee expressly requested that the sender transmit the fax"). Unlike in *j2 Global Communs., Inc.,* which Matheson cites for support (Matheson MTD at 8-9), the faxes at issue in this case were not "passing through" plaintiff's network since that was their final destination. (FAC at ¶ 30; Plaintiff Decl. ¶ 5).

For the same reason discussed here, Matheson mis-cites *Cellco Partnership v. Dealers Warranty, LLC*, LEXIS 106719, at *12 (D.N.J. Oct. 4, 2010) ("Congress intended to authorize private causes of action only in state courts") and *Kopff v. World Research Group, LLC*, 568 F.Supp.2d 39, 40–42 (D.D.C.2008) (fax addressed to bankrupt husband could not be assigned to his wife for purpose of establishing standing under TCPA). (Matheson MTD at 5).

The most ironic citation of all has to be Matheson's use of his own co-Defendant and employer's matter before the FCC, *In the Matter of WestFax, Inc. Pet. For Consideration and Clarification,* 30. F.C.C. Rcd. 8620 (F.C.C. 2015) ("*In re WestFax Pet.*") where Matheson falsely claims that Astro "simply delivers faxes to its subscribers." (Matheson MTD at 5-6). Nothing could be further from the truth as Astro has no subscribers for the phone numbers that received the faxes at issue. (FAC at ¶ 30). As such, the "absurd result" Matheson complains of is a mere fiction in this case as there are no subscribers at issue. (Matheson MTD at 6).

In reality, WestFax sought clarification from the FCC as to whether an 'efax' that is received on a fax server and then converted to an email is a 'fax, an email or both.' *Lyngaas*

*v. Curaden AG*, 992 F.3d 412, 426 (6th Cir. 2021) (quoting *In re WestFax Pet.* ¶ 5 (2015)). "In response, the Consumer and Governmental Affairs Bureau (the Bureau) of the FCC issued a declaratory ruling in August 2015 'mak[ing] clear that a type of fax advertisement—an efax, a document sent as a conventional fax then converted to and delivered to a consumer as an electronic mail attachment—is covered by the consumer protections in the [TCPA].'" *Lyngaas v. Curaden AG*, 992 F.3d 412, 426 (6th Cir. 2021) (quoting *In re WestFax Pet.* ¶ 1). The Bureau reasoned that because efaxes, as defined by WestFax, were sent over telephone lines, it satisfied 'the statutory requirement that the communication be a fax on the originating end.' *In re WestFax Pet* ¶ 9. And the '**statutory requirements** to be a fax on the receiving end' were satisfied because '[t]he definition of telephone facsimile machine sweeps in the fax server and modem, along with the computer that receives the efax because together they by necessity have the capacity to transcribe text or images (or both) from an electronic signal received over a telephone line onto paper.' *Lyngaas v. Curaden AG*, 992 F.3d 412, 426 (6th Cir. 2021) (quoting 47 C.F.R. § 64.1200(f)(13)) (emphasis added). Matheson repeatedly claims that Plaintiff's servers do not qualify as telephone facsimile machines without any factual support. (Matheson MTD at 11-12). Contrary to Matheson's claims, Plaintiff's fax servers are facsimile machines within the statutory definition. (Plaintiff Decl. ¶¶ 3-6). The Sixth Circuit Court of Appeals addressed this point directly:

> The TCPA defines a 'telephone facsimile machine as 'equipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper.' This definition makes clear that a 'telephone facsimile machine' encompasses more than traditional fax

14

> machines that automatically print a fax received over a telephone line. In particular, it includes 'equipment' that has the 'capacity . . . to transcribe text or images,'… from or onto paper—as long as the electronic signal is transmitted or received over a telephone line.

*Lyngaas v. Curaden AG*, 992 F.3d 412, 426 (6th Cir. 2021) (quoting 47 U.S.C. § 227(a)(3)). Plaintiff need not plead that the faxes at issue were transcribed onto paper as Astro's servers have the capacity to print. (FAC at ¶ 21; Plaintiff Decl. ¶ 5). The Sixth Circuit made clear that the TCPA "does not require the actual printing of the advertisement, which dispels the defendants' argument that Congress was concerned only with the burdensome ink-and-paper costs of fax advertising" and that court specifically noted its awareness as to the Bureau's recent "declaratory ruling" in *In re Amerifactors Fin. Group, LLC Pet. for Expedited Declaratory Ruling*, 34 F.C.C.R. 11950, 2019 FCC LEXIS 3608, 2019 WL 6712128, *1, *3 ¶¶ 2, 11 (Dec. 19, 2019) prior to issuing the decision. *Lyngaas v. Curaden AG*, 992 F.3d 412, 427 (6th Cir. 2021).

The critical question for this Court to decide at this juncture is whether Defendant Matheson can make Plaintiff's business cease to function properly without violating the TCPA. (FAC at ¶ 44; Plaintiff Decl. ¶ 8).

## IV.    CONCLUSION

WHEREFORE, Plaintiff respectfully requests the Court Deny the Chad Matheson's Motion to Dismiss (Doc. 54), and such other relief this Court deems appropriate under the circumstances.

Respectfully submitted,

/s/Ross M. Good
Ross M. Good, Esq.
Loftus & Eisenberg, Ltd.
161 N. Clark, Suite 1600
Chicago, Illinois 60601
direct: (786) 539-3952
ross@loftusandeisenberg.com
**Attorney for Plaintiff ASTRO COMPANIES, LLC.**

Dated: May 8, 2024

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 8, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of record.

<u>/s/ Ross M. Good</u>