IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:23-cv-02328-SKC-MEH

ASTRO COMPANIES, LLC,

    Plaintiff,

v.

WESTFAX INC,
DUCK DIVE COMMUNICATIONS LLC d/b/a JBLAST,
BARRY CLARK
CHAD MATHESON, and
JOHN DOES 1-10,

    Defendants.

---

**CHAD MATHESON'S REPLY IN FURTHER SUPPORT OF HIS MOTION TO DISMISS ASTRO'S FIRST AMENDED COMPLAINT**

---

## I. INTRODUCTION

To be legally sufficient and survive a motion to dismiss, Astro's pleading must contain a "short and plain statement of the claim showing that [Astro] is entitled to relief." Fed. R. Civ. P. 8(a)(2). Here, Astro fails to allege any facts demonstrating it is entitled to relief for alleged violations of the TCPA because it is not a party Congress intended to protect through the TCPA. As such, Astro's FAC must be dismissed with prejudice. Even if the Court somehow finds that Astro is a consumer Congress intended to protect with the TCPA, at the very least Mr. Matheson must be dismissed from this case. Mr. Matheson did not send any fax, is not alleged to be a fax broadcaster, nor is he alleged to be a principle, owner, or director of a fax broadcaster. The facts alleged do not provide any basis to hold Mr. Matheson personally liable under the TCPA.

## II. ARGUMENT

### A. Astro Confuses and Misstates the Applicable Legal Standard on a Motion to Dismiss for Lack of Statutory Standing.

A motion to dismiss for lack of statutory standing is properly viewed as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *See Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1236 (Fed. Cir. 2019) (motions to dismiss based on statutory standing defects are properly brought under Rule 12(b)(6) rather than 12(b)(1) because such defects are not jurisdictional); *Bitscopic, Inc. v. US*, 166 Fed.Cl. 677, 699 (Fed. Cl. 2023) (same). Astro's arguments relating to Article III Standing are misplaced, and Astro's argument that Mr. Matheson is attempting to attack the Court's subject matter jurisdiction is

1

similarly misguided. Mr. Matheson is not advancing a 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction. Mr. Matheson simply submits that Astro has no right to pursue the cause of action it asserts. *See John Wiley & Sons, Inc. v. DRK Photo,* 882 F.3d 394, 402 n.4 (2d Cir. 2018) (the phrase "statutory standing" refers to "a plaintiff's right to pursue a cause of action."); *Lexmark Intern., Inc. v. Static Control Components, Inc.,* 572 U.S. 118 (2014) (explaining the "statutory standing" inquiry asks whether the plaintiff "has a cause of action"). The TCPA does not provide Astro with a right to pursue a claim to recover for the TCPA violations alleged because it was neither a consumer nor the intended recipient of the faxes as issue. In other words, Astro has no statutorily protected rights under the TCPA to pursue its alleged causes of action.

Even if the Court considers Mr. Matheson's Motion to be brought pursuant to Fed. R. Civ. P. 12(b)(1), his motion to dismiss does not "go beyond the allegations in the complaint" and does not mount a "factual attack" on jurisdiction. (Astro's Response (Dkt. 57) ("Resp.") at 6). Mr. Matheson does not offer or rely upon any facts beyond those appearing on the face of the FAC. All alleged facts cited in the Motion (which are only taken as true for purposes of the Motion and are not admitted) come directly from, or can be drawn from reasonable inferences from, Astro's allegations. To that end, Mr. Matheson respectfully requests the Court strike and disregard the Declaration of Mike Ray, owner of Astro, because the Court must accept the allegations of the complaint as true and is not to consider documents outside the pleadings. *See* Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The Court should disregard

2

Astro's belated attempt to add or clarify the allegations in its FAC. Notwithstanding, Mr. Ray's declaration does not remedy the fatal flaws in Astro's case.

### B. Astro Has No Statutory Right to State a Claim for Violation of the TCPA.

#### *i. Only consumers -- the intended recipients of unsolicited advertisements -- have a statutory right to recover damages for TCPA violations.*

Astro fails to address the elephant in the room: the TCPA is a consumer protection statute and Astro *is not* the consumer to whom the faxes at issue were sent. *See In the Matter of Amerifactors Fin. Group, LLC*, 34 F.C.C. Rcd. 11950, 11954(F.C.C. 2019) ("Faxes sent to online fax services do not cause the specific harms **to consumers** Congress sought to address in the TCPA."). (emphasis added). As an online fax service provider, Astro "offers telephone numbers to its customers," and it "leases" those numbers to customers. (Resp. 1). The "phone numbers that received the faxes at issue in this case are available to be leased to customers" but at the time the faxes at issue were allegedly sent to Astro's reserved telephone numbers they "were not leased" to any customer. (Resp. 1). "Put simply, the phone numbers that received the faxes at issue were not assigned to any subscriber nor customer during the relevant time period." (Resp. 10). Astro is admittedly the recipient of the faxes at issue as an online fax service provider, *and not* the targeted consumer entitled to pursue the TCPA claims asserted.

Mr. Matheson appropriately cites *Bank of Am. Corp. v. City of Miami, Fla.*, to discuss the general legal proposition that statutory standing is only afforded to those parties that fall within a statute's zone of interest. 137 S. Ct. 1296, 1302 (2017). To

3

fall in the TCPA's zone of interest a plaintiff must be a consumer who is the intended target of alleged junk faxes. *Cellco Partn. v. Dealers Warranty*, *LLC*, No. CIV.A. 09-1814 FLW, 2010 WL 3946713, at *9-10 (D.N.J. Oct. 5, 2010) (the TCPA creates a statutory cause of action for consumers who are the targeted recipients of unsolicited calls and junk faxes). The Court need look no further than the face of the FAC to see that Astro was not whom the faxes at issue were addressed to and therefore does not fall within the TCPA's zone of interest.

The faxes attached as exhibits to its FAC are to be considered part of Astro's pleading. *See* Fed. R. Civ. P. 10(c). An examination of the faxes themselves show that each fax was intended for a specific recipient as addressed by their "Client ID" and a personal greeting – these recipients *are not Astro. See, e.g.* Exhibit B-1 to FAC (Dkt. 10.2) p. 2, ("Client ID #: 6517847930…Mulligan Real Estate."). Additionally, the existence of a pre-assigned customer ID and the personalized message on the attached faxes not only clearly shows that Astro was *not* the intended recipient of the faxes it relies upon to bring its TCPA claim, but also casts doubt on whether these are "junk" faxes at all or simply faxes to existing customers. *Id.*

It is also well settled that the TCPA does not provide a private cause of action to telecommunications providers, like Astro, whose role is simply to link a caller or sender to an end consumer. *See Cellco Partn. v. Wilcrest Health Care Mgt. Inc.,* No. CIV.A. 09-3534 MLC, 2012 WL 1638056 (D.N.J. May 8, 2012) (hereinafter referred to as "*Cellco*"). If this were the case, every telecommunications provider could, and would, sue for TCPA violations amounting to millions of dollars in

4

automatic statutory damages. Astro – a telecommunications company whose entire model is to lease fax numbers to consumers – cannot possibly believe in good faith that it was the intended recipient of the faxes at issue.

Finally, Mr. Matheson offers the Court this simple analogy to consider. Astro is the same as a post office that owns, and subsequently rents out, P.O. boxes to consumers. When someone sends mail to a P.O. box that is not rented to a consumer, there is no question that the sender intended to send the mail to the P.O. box, not the post office that rents P.O. boxes. The post office, like Astro in this analogy, is merely the conduit for delivering the mail to the intended lessee of the P.O. box. Even if no one is renting the P.O. box where the mail is directed, the post office does not suddenly transform into the intended recipient of the mail. And while the post office may have to waste time sorting, returning, or storing undeliverable mail, that is the economic and inherent consequence of serving as a post office that rents P.O. boxes. *See Cellco* at *8. Astro's unassigned fax numbers are just like the post-offices' unrented P.O. boxes. Astro is not the intended recipient of the faxes sent to its unassigned, ready to lease, fax numbers, and does not magically transform into the intended recipient of a fax sent to an unassigned fax number.

In a final effort, Astro argues that it has standing because it did not provide prior express invitation or permission to be sent the faxes. (Resp. 7.). But Astro would not be the party whom the Court would look at to determine if consent to receive the faxes was previously provided because Astro it is not the subscriber of the fax lines at issue. Subscribers of fax lines are the targets of advertisements contemplated by

5

the TCPA and are therefore the party whom the Court looks to determine whether prior express invitation or permission to receive faxes from the sender was given. Even if Astro was somehow the intended recipient or target of the faxes at issue, then it would know whether or not it provided consent or had an established business relationship with Coast Credit, but Astro claims it does not know. Curiously, Astro stated in its Response to Defendants' Motion to Stay Discovery (DKT 62, p. 3) that it needed discovery to determine whether Coast Credit had an established business relationship with, or consent from, the intended recipients of the faxes at issue. This is an admission by Astro that it was not the intended recipient of the faxes.

### ii. *Astro fails to identify any case law to support its claim that it has statutory standing, and otherwise fails to address the undisputed case law cited in Mr. Matheson's Motion.*

In a futile attempt to support its standing argument, Astro cites inapposite cases that state generic problems Congress intended to address by enacting the TCPA. But the cases cited by Astro are distinguishable because the plaintiffs asserting TCPA claims in each of the cases were the intended and actual recipients of the problematic faxes. *See, e.g. IMHOFF Investment, L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 633 (6th Cir. 2015) (plaintiff was the intended recipient of the unsolicited fax advertisement); *Sandusky Wellness Center, LLC v. Medtox Scientific, Inc.*, 821 F.3d 992 , 994 (2016) (named class plaintiff chiropractic center was intended recipient of an unsolicited fax advertisement); *Ira Holtzman, C.P.A., & Associates Ltd. v. Turza*, 728 F.3d 682, 683 (7th Cir. 2013) (each class plaintiff suffered "discrete injuries" and could prove that its specific CPA's firms' "fax machine[s] or computer[s] received the fax."); *Bridging Communities Inc. v. Top Flite Financial Incorporated*,

6

843 F.3d 1119, 1122 (6th Cir. 2016) (unsolicited fax advertisements directed to, and received by, a nonprofit and Michigan corporation); *Tech Instrumentation Inc. v. Eurton Electric Co.*, No. 16-CV-02981-MSK-KMT, 2021 WL 4099578 (D. Colo. Sept. 9, 2021) (named class plaintiff was intentionally sent, and actually received, a targeted fax advertisement from defendant).

Similarly, Astro's quote from *Ace Am. Ins. Co. v. Dish Network, LLC* is also taken out of context. 173 F. Supp. 3d 1128 (Dist. Colorado, 2016). *Ace* is a case interpreting the applicability of coverage provided under an insurance policy for alleged TCPA violations and discusses whether damages contemplated by the TCPA are accurately categorized as actual damages or a penalty under the applicable insurance policy. That case has nothing to do with TCPA standing.

The ultimate holding and outcome of *Cellco* is highly instructive and is persuasive authority for the Court.[1] In that case, OnStar (like Astro) offered a variety of services to OnStar subscribers. *Id.* at *3. The OnStar equipment had an assigned number, was embedded in vehicles, and the OnStar system automatically accepted every call made to that number, regardless of whether the vehicle was being operated or was occupied, and regardless of whether a subscriber had signed up for the service. *Id.* OnStar alleged that even in instances where there was no paying subscriber to the OnStar service, or a subscriber was not operating the vehicle or did not answer

---

[1] In its attempt to distinguish *Cellco*, Astro quotes to the court's language that "the TCPA allows only one recovery per each allegedly illegal call." *Cellco* at *24. When reading the quote in context, it is clear the court was stating that the TCPA only allows recovery for illegal calls made to "'the recipient'" and not to the telecommunications provider. *Id.*

7

the call, OnStar's system still picked up the calls and, as a result, OnStar directly incurred damages. *Id.* OnStar's TCPA claims were dismissed because even though OnStar picked up the calls, OnStar was not the "intended recipient" of the telemarketing calls at issue and therefore lacked statutory standing. [2] *Id.* at 7. The court was clear that it was OnStar's potential subscribers – whether or not one was actually in the car or paying for the OnStar service – were the intended recipients of the illegal calls. *Id.* Just as the Court reasoned in OnStar, just because "the phone numbers that were sent the faxes at issue were not assigned to any subscriber or customer of Astro" (Resp. 11-12) but Astro happened to receive the faxes as the intermediary, does not make Astro the intended recipient of the faxes at issue as required for TCPA standing.

Additionally, Astro claims that *Leyse v. Bank of Am., Nat. Ass'n,* No. 09 CIV. 7654 (JGK), 2010 WL 2382400 (S.D.N.Y. June 14, 2010) and *j2 Glob. Commun., Inc. v. Protus IP Sols.,* No. CV 06-00566 DDP AJWX, 2010 WL 9446806 (C.D. Cal. Oct. 1, 2010) do not support Mr. Matheson's arguments. Astro misses the point of those cases. Both courts made abundantly clear that it is **the called party** (*i.e.* the party

---

[2] The court went on to state: "Even assuming, however, that a literal reading of the statute would permit Plaintiffs statutory standing as 'a person or entity' who had been 'called' (notwithstanding 'intended recipient' status) to bring a private cause of action under [the TCPA], the purpose and intent of the TCPA is not consistent with maintenance of such a cause of action, and must be dismissed on prudential grounds. To the extent Plaintiffs attempt to assert claims for TCPA violations on behalf of themselves, as telecommunications providers…it is clear from an examination of the legislative history and case law interpreting the TCPA that Plaintiffs do not fall within the zone of interests protected by the statute for purposes of prudential standing." Astro's FAC can also be dismissed with prejudice on prudential standing grounds just as the court did in *Cellco*.

8

the caller intended to reach) that has standing to assert a TCPA violation, and not "whomever happens to answer the phone or retrieve the fax." *Leyse,* No. 09 CIV. 7654 (JGK), at *4. Here, Astro allegedly retrieved the faxes at issue, but those faxes were not directed to Astro.

Finally, Astro mistakenly asserts that Mr. Matheson's Motion "fails to acknowledge the binding Tenth Circuit caselaw" set forth in *U.S. Fax Law Center, Inc. v. Ihire, Inc.*, 476 F3d 1112, 1120 (10th Cir. 2007). Mr. Matheson in fact cites this case at pages 9-10 of his Motion for the very proposition proffered by Astro: because TCPA claims are essentially personal-injury and privacy claims, Astro, a company, has no basis to assert claims sounding in personal injury or invasion of privacy.

### C. Astro did not receive the faxes on a "telephone facsimile machine," a necessary element to state a TCPA claim.

As more fully explained in Mr. Matheson's Motion at pages 11-12, Astro cannot satisfy the second element required to state a claim under the TCPA because Astro does not allege that the faxes at issue were sent to "a telephone facsimile machine." Instead, the FAC alleges that the faxes were sent to an online fax service operated by Astro. In opposition to Mr. Matheson's argument on this point Astro cites only *Lyngaas v. Curaden Ag*, 992 F.3d 412 (6th Cir. 2021), a case that was decided *before* the FCC's applicable 2019 ruling in *In the Matter of Amerifactors Fin. Group, LLC*, 34 F.C.C. Rcd. 11950 (F.C.C. 2019). In fact, Astro does not even acknowledge the 2019 declaratory ruling that clarified online fax service, like Astro, are not considered a telephone fax machine under the TCPA.

### D. Astro Cannot Sustain a Claim Against Matheson Personally.

Astro completely fails to address the TCPA's statutory language and applicable caselaw Mr. Matheson cites in his Motion supporting his individual dismissal from this case. The TCPA's language is unambiguous: only the "sender" and/or "[a] facsimile broadcaster" (in limited circumstances) can be liable for a TCPA violation. 47 U.S.C. § 227(b)(1)(C); CFR § 64.1200(a)(4)(vi). Only if a party is, by definition, a "facsimile broadcaster" can it be liable for having a "high degree of involvement in, or actual notice of, the unlawful activity." Astro does not, and cannot, allege that Mr. Matheson personally sent any of the faxes at issue, or somehow fits into the definition of a "facsimile broadcaster."[3] Instead, Astro claims that Mr. Matheson is an appropriate defendant in its lawsuit "because of [Mr. Matheson's] direct conduct… in relation to his co-defendants" and "because of work he performed on behalf of Coast Credit." (Resp. 4-5). Astro's allegation that Mr. Matheson "worked" with Coast Credit and the other defendants is not enough to assert personal liability under the TCPA. Astro cites to no cases in support of its position. Mr. Matheson must be dismissed from this case.

### III. CONCLUSION

**WHEREFORE** for the foregoing reasons, Chad Matheson respectfully requests the Court dismiss Astro's First Amended Complaint with prejudice and grant such other relief as may be just and proper.

---

[3] The FAC does not allege that Mr. Matheson had any role in the alleged Fax Police Fax and therefore liability as it relates to that specific fax cannot attach to Mr. Matheson.

10

Respectfully submitted this 22nd day of May, 2024.

                                          **SPENCER FANE LLP**

                                         *s/Johanna R. Hyman*
Jamie N. Cotter
1700 Lincoln Street, Suite 2000
Denver, CO 80203
Phone:  (303) 839-3826
Email:  jcotter@spencerfane.com

and

Johanna R. Hyman
100 South Fifth Street, Suite 2500
Minneapolis, MN 55402
Phone:  (612) 268-7009
Email:  jhyman@spencerfane.com

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 22, 2024, I caused the foregoing document to be filed electronically with the Clerk of Court through ECF, which generates service on all parties of record, including the following:

Ross Good, ross@loftusandeisenberg.com
*For Plaintiff*

James Taravella, jtaravella@montgomerylittle.com
*For Defendants  WestFax, Inc.; Duck Dive Communications, LLC; and Barry Clark*

          *s/ Johanna R. Hyman*