IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-02328-SKC-CYC

ASTRO COMPANIES, LLC,

      Plaintiff(s),

v.

WESTFAX INC,
DUCK DIVE COMMUNICATIONS LLC, d/b/a JBlast,
BARRY CLARK,
CHAD MATHESON, and
JOHN DOES 1-10,

      Defendant(s).

**PLAINTIFF'S MOTION TO RECONSIDER ORDER DISMISSING WITH PREJUDICE AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

NOW COMES Plaintiff, ASTRO COMPANIES, LLC ("Plaintiff" or "Astro") by and through its undersigned counsel, and hereby respectfully requests, pursuant to Fed. R. Civ. P. 59(e) that this Court reconsider its Order granting the Motion to Dismiss Astro's Amended Complaint filed by Defendant CHAD MATHESON ("Matheson") and dismissing the instant case as to all Defendants with prejudice. (Doc. 70, Order). In support of its Motion, Astro states as follows:

1

I.  **BACKGROUND**

This case challenges Defendants' practice of sending unsolicited facsimile advertisements in violation of the federal Telephone Consumer Protection Act of 1991 ("TCPA"), as amended by the Junk Fax Prevention Act of 2005, 47 USC § 227 ("JFPA"), and the regulations promulgated thereunder by the Federal Communications Commission ("FCC"). As explained in further detail below, Astro provides a HIPAA-compliant faxing service to healthcare practices and hospitals.[1] "Astro's business, and that of its customers, is negatively impacted when a party sends thousands of faxes to numbers owned by Astro because its resources fill up and legitimate faxes cannot be sent or received. Astro refers to this as a mass fax event." Doc. 57-1 at ¶ 8 (internal quotation omitted).

Though each named Defendant herein filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court dismissed the case based solely upon Matheson's assertion that Astro cannot state a claim for relief because the alleged unsolicited fax advertisements were not sent to a "telephone facsimile machine" within the meaning of the TCPA, 47 U.S.C. § 227(a)(3).[2] Order at 2.

The Court deferred to a declaratory ruling, issued by an inferior bureau of the FCC—and not the full Commission—that was neither reviewable nor entitled to deference. Order at 6 (citing *In re Amerifactors Fin. Group, LLC Pet. for Expedited Declaratory Ruling,* 34 F.C.C.R. 11950, 2019 FCC LEXIS 3608, 2019 WL 6712128 (Dec. 9, 2019). The Court declined to

---

[1] HIPAA stands for Health Insurance Portability and Accountability Act. HIPAA regulations require encryption above that of standard email which is one of the reasons faxing remains critical to the healthcare system. 45 CFR § 164.312(a)(iv).

[2] Because the Court dismissed the case on the grounds that Astro's servers do not fall within the scope of the statutory definition of telephone facsimile machine, it did not address any issues raised regarding standing or the question of any Defendants' "high degree of involvement" in the transmission of the junk faxes at issue. *See* Order at 4.

consider two binding final orders of the FCC cited by Plaintiff concluding that the term "telephone facsimile machine" does indeed encompass the type of "equipment" used by Astro to receive the faxes at issue. *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act* of 1991, 68 Fed. Reg. 44144, 44169 (F.C.C., July 25, 2003) ("2003 Order"); *In re WestFax, Inc. Pet. For Consideration & Clarification*, 30. F.C.C. Rcd. 8620 (F.C.C. Consumer and Governmental Affairs Bureau, August 28, 2015) ("WestFax Ruling").

Astro now respectfully asks that the Court reconsider its Order dismissing the case for the following reasons:

(1) Pursuant to the 28 U.S.C. § 2342(1) ("Hobbs Act"), the Court is bound by the FCC's 2003 Order and WestFax Ruling that the TCPA's definition of "telephone facsimile machine" encompasses not only traditional stand-alone facsimile machines but also personal computers and fax servers;

(2) Because the *Amerifactors and Ryerson* rulings relied upon by the Court are declaratory rulings issued by the Consumer & Government Affairs Bureau that are currently on appeal to the full Commission, and not final orders by the FCC, they are not covered by the Hobbs Act and are not entitled to any particular deference; and

(3) Even if it were within this Court's purview to construe the meaning of "telephone facsimile machine," reading the TCPA's definition of that term in § 227(A)(3) as applying only to traditional stand-alone facsimile machines would lead to unintended and absurd results.

## II.     STANDARD OF REVIEW

### A. Motion for Reconsideration

A Rule 59(e) motion to reconsider allows the district courts the "chance to rectify [their] own mistakes immediately after [the] decision." *Scott v. Buckner Co.*, 2024 U.S. Dist. LEXIS 158080, at *10 (D. Colo. Sep. 3, 2024) (quoting *Banister v. Davis*, 590 U.S. 504, 508 (2020)). The Court may grant reconsideration where it "misapprehended the facts, a party's position, or the controlling law." *Id.* (citing *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)). A Rule 59(e) motion "must be filed no later than 28 days after the entry of the judgment."

*Quintana v. City of Muskogee*, 2025 U.S. App. LEXIS 489, at *4 (10th Cir. Jan. 10, 2025); *see also Vandiver v. MG Billing Ltd.*, 653 F. Supp. 3d 884, 888 (D. Colo. 2023) (granting motion for reconsideration).

    B.  **Review of FCC Declaratory Rulings and FCC Final Orders**

As to the Court's stated basis for granting the Motion to Dismiss—that "[t]he resolution of this case turns on a consideration of what a telephone facsimile machine is *or,* as pertinent here, is not," Order at 1—district courts do not have jurisdiction to rule on this issue as the FCC has issued "final orders" interpreting the statutory definition in the 2003 Order and the WestFax Ruling. Pursuant to the Hobbs Act, "courts of appeals have exclusive jurisdiction over final orders issued by the FCC." *Council Tree Investors, Inc. v. FCC*, 739 F.3d 544, 551 (10th Cir. 2014) (citing 28 U.S.C. § 2342(1)). "Exclusive jurisdiction for review of final FCC orders . . . lies in the Court of Appeals." *Horizon Tower Ltd., LLC v. Park County*, No. 2:23-CV-37-ABJ, 2024 U.S. Dist. LEXIS 193222, at *21 (D. Wyo. Oct. 4, 2024) (quoting *FCC v. ITT World Commc'ns, Inc.,* 466 U.S. 463, 468 (1984)).

Moreover, the FCC has expressly withheld from the Consumer & Governmental Affairs Bureau ("the Bureau"), which issued *Amerifactors*, the authority to issue a "final order." 47 C.F.R. § 0.361. The statute that gives the FCC the authority to delegate its functions, 47 U.S.C. § 155, and the FCC regulations actually delegating those functions, draw a clear distinction between the FCC's bureaus and the full Commission itself, and the FCC has not delegated (and cannot delegate) to a bureau the authority to issue final orders. See *NTCH, Inc. v. Fed. Commc'ns Comm'n*, 877 F.3d 408, 413 (D.C. Cir. 2017) ("The Bureau's order was not a Commission order and, therefore, it was not an order subject to judicial review.").

4

### III.     ARGUMENT

A. Pursuant to the Hobbs Act, the Court is bound by the FCC's unequivocal Final Rule that the TCPA's definition of "telephone facsimile machine" encompasses not only traditional stand-alone facsimile machines but also personal computers and fax servers.

Pursuant to the Hobbs Act, 28 U.S.C. § 2342(1), district courts do not have the authority to either disregard the FCC's rulings on the definition of "telephone facsimile machine" or to rule upon their validity. The TCPA, enacted in 1991, makes it unlawful for any person to "use any telephone facsimile machine, computer or other device to send to a telephone facsimile machine, an unsolicited advertisement . . . ." 47 U.S.C. § 227(b)(1)(C). The TCPA defines the term "telephone facsimile machine" as any "equipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." 47 U.S.C. § 227(a)(3); 47 C.F.R. § 64.1200(f)(14)).

In a final order issued in 2003 to clarify the scope and implementation of the TCPA, the FCC acknowledged that there had been some question as to whether fax servers and personal computers should be subject to the unsolicited facsimile provisions. After considering various viewpoints, the FCC concluded that "faxes sent to personal computers equipped with, or attached to, modems and to computerized fax servers are subject to the TCPA's prohibition on unsolicited faxes," whereas the prohibitions simply do not extend to fax messages sent as email over the Internet. 2003 Order ¶¶ 142, 143, 145. A copy of the FCC's 2003 Order, which is subject to the Hobbs Act, is attached hereto and made a part hereof as **Exhibit A**.  Plaintiff relied on the 2003 Order in its response to the motion to dismiss. (Doc. 57 at 4).

5

In the 2003 Order, the FCC recognized that developing technologies had resulted in the ability to send and receive facsimile messages in a variety of ways. *Id.* As such, the FCC concluded that the TCPA's definition of "telephone facsimile machine" applies broadly to *any* equipment that has the capacity to send or receive text or images. *Id.* at ¶ 144. Explaining further, the FCC held:

> Congress could not have intended to allow easy circumvention of its prohibition when faxes are (intentionally or not) transmitted to personal computers and fax servers, rather than to traditional stand-alone facsimile machines. . . . Congress . . . took account of the 'interference, interruptions, and expense' resulting from junk faxes, emphasizing . . . that "[i]n addition to the costs associated with the fax advertisements, when a facsimile machine is receiving a fax, it may require several minutes or more to process and print the advertisement. During that time, the fax machine is unable to process actual business communications. *Id., citing* H.R. Rep. No. 102-317 at 25 (1991)."

These precise harms, identified cited by the FCC in adopting the 2003 Order, is what Astro seeks redress for in this case.

In *Lyngaas v. Curaden AG*, 992 F.3d 412, 426 (6th Cir. 2021), the Sixth Circuit emphasized that the FCC "reinforced" the point that the TCPA is not restricted to stand-alone fax machines when, after a period of notice and comment, it explained in the 2003 Order that "developing technologies permit one to send and receive facsimile messages in a myriad of ways," and thereby ruled that "faxes sent to personal computers equipped with, or attached to, modems and to computerized fax servers are subject to the TCPA's prohibition on unsolicited faxes." *Lyngaas*, 992 F.3d at 426 (citing 2003 Order). The court emphasized the FCC's reasoning, cited above, that the purpose of requiring that a telephone have the "capacity to transcribe text or images" is to ensure that the prohibition on unsolicited faxing not be circumvented, as Defendants are attempting to do here.

It is also worth noting that in 2009, Defendant WestFax, sought clarification as to whether an "efax" received on a "fax server" and then converted to an email is a "fax, an email or both." *See WestFax, Inc. Petition for Reconsideration & Clarification*, CG Docket Nos. 02-278, 05-338 (Sept. 25, 2009), at 3 ("WestFax Petition"). WestFax argued in that petition that "fax servers are not designed to print and do not print the messages," and Congress's findings regarding lost paper, toner, as well as its findings regarding time wasted "monitoring" unwanted faxes by employees, and "inability to process actual business communications or lines or printers tied up," were "not accurate with respect to faxes sent to fax servers." (WestFax Petition at 4).

On August 28, 2015, the Bureau denied the WestFax Petition, relying largely on the 2003 Order: "Based on our clarification, consumers will enjoy the same protections from unwanted efaxes as they do from conventional faxes." (WestFax Ruling at ¶ 1). The WestFax Ruling explained that a document sent as a fax over a telephone line to the recipient's fax number becomes an efax when a fax server on the receiving end converts the fax transmission into a digital image or PDF that is in turn sent to the recipient as an attachment to an email message. *Id.* The WestFax Ruling further noted that "[E]faxes differ from other faxes in that the intended recipient, instead of using a fax machine to receive incoming faxes, uses equipment or a service that converts the incoming fax into a format that can be and is emailed to the recipient." *Id. at* 1 ¶ 1 n.1 (emphasis added). The Bureau ruled efaxes are covered by the TCPA: WestFax's description makes clear that efaxes are sent over telephone lines, which satisfies the statutory requirement that the communication be a fax on the originating end. Efaxes also satisfy the statutory requirements to be a fax on the receiving end. The definition of "telephone facsimile machine" sweeps in the fax server and modem, along with the computer that receives the efax because together they by necessity have the capacity to "transcribe text or images (or both) from

7

an electronic signal received over a telephone line onto paper." The interpretation is consistent with the 2003 Order.[3] Plaintiff relied on the WestFax Ruling in its response to the motion to dismiss. (Doc. 57 at 4).

Taken together, the text of the TCPA, the FCC's 2003 Order, and the WestFax Ruling, make clear that when an unsolicited fax advertisement is sent from a telephone facsimile machine, computer, or other device over a telephone line to a ten-digit telephone number, arrives at the fax server the sender is subject to liability under the TCPA. This Court's determination that "telephone facsimile machine" does not include Astro's fax servers directly contravenes the FCC's final orders and oversteps its jurisdiction, in violation of the Hobbs Act.

B. Because the *Amerifactors and Ryerson* rulings relied upon by the Court are declaratory rulings issued by the Consumer & Government Affairs Bureau and not final orders by the FCC, they are not covered by the Hobbs Act and are not entitled to any particular deference.

In its Order dismissing this case, the Court relied upon the Bureau's declaratory rulings from *In re Amerifactors Fin. Group, LLC Pet. for Expedited Declaratory Ruling,* 34 F.C.C.R. 11950, 2019 FCC LEXIS 3608, 2019 WL 6712128, *1, *3 ¶¶ 2, 11 (Dec. 19, 2019) and *In re Joseph T. Ryerson & Son, Inc. Petition for Declaratory Ruling,* 35 F.C.C. Rcd. 9474 (2020). In *Amerifactors* and *Ryerson,* the Bureau endorsed a narrower definition of "telephone facsimile machine" that is contrary to that set forth in the FCC's 2003 Order and the WestFax Ruling. As

---

[3] The WestFax Ruling then addressed the "email over the Internet" "caveat" noted in *Lyngaas*, noting that faxes "sent as an email over the Internet" are not subject to [the] TCPA and the rules. "Efaxes are sent as a fax over a telephone line to a telephone facsimile machine and are thus subject to TCPA and the Commission's rules. By contrast, *a fax sent as an email* over the Internet–e.g., a fax attached to an email message or a fax whose content has been pasted into an email message—is not the subject of the TCPA." (WestFax Ruling at ¶ 10) (emphasis in original). "[A]s the Commission stated in 2003, it would make little sense to apply a different set of rules (or, in this case, no rule at all) to faxes sent to one type of device (a standalone fax machine) versus another (a computer and its attachments) when the sender generally does not know what device will receive the fax." *Id.* at ¶ 11.

noted in Section II, above, the FCC has not delegated (and cannot delegate) to a bureau the authority to issue final orders. Here, there is a pending application for review of both the *Amerifactors* and *Ryerson* Rulings with the full Commission. (See *In re Amerifactors Fin. Group, LLC Pet. for Expedited Declaratory Ruling*, CG Docket Nos. 02-278, 05-338, Application for Review (filed Jan. 8, 2020) and *In re Petition of Joseph T. Ryerson & Son, Inc. for Declaratory Ruling*, CG Docket Nos. 02-278, 05-338, 35 F.C.C. Rcd. 9474 (2020)). If the party that filed that application for review were to file a Hobbs Act petition for judicial review of the *Amerifactors* or *Ryerson* Ruling, it would be dismissed "as incurably premature." *Int'l Telecard Ass'n v. FCC,* 166 F.3d 387, 388 (D.C. Cir. 1999). *Amerifactors* and *Ryerson* are currently on appeal to the full Commission—meaning the four Commissioners and the Chairman (when) appointed by the President with the Senate's consent—pursuant to 47 C.F.R. § 1.115, which is a "condition precedent to judicial review." 47 U.S.C. § 155(c)(7). Neither *Amerifactors* nor *Ryerson* are "final orders" of the FCC subject to the jurisdictional limitations of the Hobbs Act.[4]

The D.C. Circuit, the default circuit for an appeal of an FCC order interpreting the TCPA, holds unequivocally: "Lest there be any misunderstanding, we expressly hold that a petition for review filed after a bureau decision but before resolution by the full Commission is subject to dismissal as incurably premature." *Int'l Telecard*, 166 F.3d at 388. In other words, where an application for review of a bureau ruling is pending, until the full Commission issues a "final order" on that application, "[o]ngoing agency review renders an order nonfinal for purposes of

---

[4] By contrast, as no application for review before full FCC was ever filed for the WestFax Ruling (discussed above), that order, like the 2003 Order, is a final order subject to Hobbs Act protection. *See Georgia Power Co. v. Telport Comm'n Atlanta,* 346 F.3d 1047, 1050 (11th Cir. 2003) (order from subordinate unit of the FCC (such as the Bureau) becomes final if no application for review before the full Commission is filed).

judicial review." *Id*. Moreover, it is worth noting that though the *Amerifactors* and *Ryerson* rulings may, at one time, have been entitled to deference (assuming one could successfully argue the statutory language is ambiguous) pursuant to the *Chevron* doctrine, they are no longer entitled to such deference because courts are no longer required to defer to a federal agency's interpretation of an ambiguous statute (assuming, arguendo, it is ambiguous), instead exercising their own independent judgment to decide whether an agency acted within its statutory authority. *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024).

C.  Even if it were within this Court's purview to construe the meaning of "telephone facsimile machine," to construe the TCPA definition as applying only to traditional stand-alone facsimile machines would lead to an unintended and absurd result.

In addition to misconstruing the *Americfactors* and *Ryerson* declaratory orders issued by the Bureau as final orders issued by the FCC, this Court also relied upon statutory construction arguments to suggest that "telephone facsimile machine"—contrary to the FCC's 2003 Order—applies only to traditional stand-alone facsimile machines. As already noted, the TCPA defines the term "telephone facsimile machine" as any "equipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." 47 U.S.C. § 227(a)(3); 47 C.F.R. § 64.1200(f)(14)). Without even relying upon the FCC's final rule for guidance, because, as an online fax service provider, Astro uses its own equipment which *has the capacity* to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper (*see* Doc. 10, First. Am. Compl. ¶ 21), it is therefore protected by the TCPA.

Specifically, Astro is not an online fax service subscriber as Astro provides online fax services to its customers. *Id.* ¶¶ 24, 25. Astro is the subscriber for each telephone line that was

10

sent the faxes at issue in this case. *Id.* ¶ 26. Astro used its own equipment to receive the faxes at issue in this case. *Id.* ¶ 27. Astro "owns and operates the resources (including but not limited to server hardware, software and telephone services) upon which the faxes at issue were received which all have the capacity to print." *Id.* ¶ 10; Doc. 57-1 at ¶¶ 4-5. *See also Lyngaas* , 992 F.3d at 426-427.

The Court's finding that a plain reading of the statutory language indicates that the TCPA contemplates only traditional fax machines is unsupported and yields an absurd result. To fall within the TCPA prohibition, the unsolicited fax can be sent from a "telephone facsimile machine"—as defined by the statute—or from a "computer," or from some "other device." 47 U.S.C. § 227(b)(1)(C). But, the Court emphasized, the offending fax can only be received by a "telephone facsimile machine." *Id*. The Court applied the *expressio unius est exclusio alterius* canon to conclude that only messages received by a traditional fax machine are covered by the TCPA. Order at 5-6. But, this reasoning ignores the fact that it matters not where or how the fax originated, as the harm arises at the point of receipt. What matters, as the TCPA specifically states and the FCC explained in the 2003 Order, is that the fax is sent to "equipment that has the capacity . . . to transcribe text or images from or onto paper as long as the electronic signal is transmitted or received over a telephone line." The Court viewed with skepticism Astro's allegation that "it possesses equipment enabling it to print the cloud-based faxes onto paper" as an "apparent attempt to satisfy the statute." Order at 5 (citing Doc. 10 ¶ 22). The Court went on to assert that TCPA protections do not extend to Astro because the statutory language "specifically contemplates a 'machine' that receives and prints faxes and not a service that does so." Order at 5. Then, based upon the Black's Law Dictionary definition of "machine," it determined that a fax server is not a machine. It is unclear why a fax server is not "a device or an

11

apparatus consisting of fixed and moving parts that work together to perform some function." The Court then reiterated that though a computer might indeed be a machine or other device, the prohibition only applies to traditional fax machines on the receiving end. This, it is respectfully submitted, is incorrect.

Though there may have been many reasons for the legislature to include alternative means of sending faxes while excluding such alternatives for purposes of receipt, the distinction does not in any way justify a leap to the conclusion that receipt must be by "traditional fax machine" only. The Supreme Court has long held that the *expressio unius* canon does not apply if there are "contrary indications that adopting a particular rule or statute was probably not meant to signal any exclusion," *Marx v. General Revenue Corp.*, 568 U.S. 371, 380 (2013) (citations omitted), and it applies only when "circumstances support a sensible inference that the term left out must have been meant to be excluded." *N.L.R.B. v. SW General, Inc.*, 137 S. Ct. 929, 940 (2017). The "contrary indications" here are that the TCPA expressly defines "telephone facsimile machine" to include "any equipment," and thus there can be no "sensible inference" that Congress at the same time meant to exclude "any equipment" from that same definition.

To be sure, no matter what the intent of Congress may have been in using somewhat disparate language regarding the sending and receiving of faxes for purposes of protection under the TCPA, interpreting the difference to mean that faxes must be received by a traditional fax machine to be covered leads to an absurd result. The FCC has acknowledged this, concluding that such a result is clearly not what Congress intended – particularly in light of rapid advances in technology since the TCPA was first enacted in 1991. In the 2003 Order, the FCC explained why it rejected the notion that, to be covered by the TCPA, faxes must only be received by traditional fax machines:

> Because a sender of a facsimile message has no way to determine whether it is being sent to a number associated with a stand-alone fax machine or to one associated with a personal computer or fax server, it would make little sense to apply different rules based on the device that ultimately received it. *See* 47 CFR Parts 64 and 68 [CG Docket No. 02-278, FCC 03-153]

2003 Order ¶ 145. As has already been discussed, The FCC recognized that developing technologies had resulted in the ability to send and receive facsimile messages in a variety of ways. *Id.* ¶¶ 142, 143. As such, the FCC concluded that the TCPA's definition of "telephone facsimile machine" applies broadly to *any* equipment that has the capacity to send or receive text or images. *Id.* ¶ 144.

Ultimately, the FCC foreclosed any argument that the scope of protection turns on printing costs alone, noting that faxes sent to a computer or fax server may not only shift advertising costs of paper and toner to the recipient, if the messages are printed, but they may also tie up lines and printers to that requested (as opposed to "junk") faxes are not timely received. This may increase labor costs, as employees must monitor and sift through faxes. Again, as noted above, the FCC pointed out the obvious absurdity that would result from excluding recipient online fax servers from protection. *Id.* ¶ 145. In sum, Astro's equipment falls within the definition of telephone facsimile machine under the binding FCC rulings and the plain language of the statute.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests the Court reverse judgment entered in favor of Defendants (Doc. 71), and such other relief this Court deems appropriate under the circumstances.

>*/s/Ross M. Good*
>Ross M. Good, Esq.
>The Good Law Group
>800 E. Northwest Hwy, Suite 814
>Palatine, IL 60074
>Phone: (847) 600-9576
>Email: ross@thegoodlawgroup.com
>
>**Attorney for Plaintiff Astro Companies, LLC.**

14

**CERTIFICATE OF SERVICE**

I hereby certify that on March 7, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of record.

/s/ Ross M. Good