IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-02328-SKC-CYC

ASTRO COMPANIES, LLC,
Plaintiff,
v.

WESTFAX INC,
DUCK DIVE COMMUNCIATIONS LLC, d/b/a JBlast,
BARRY CLARK,
CHAD MATHESON, and
JOHN DOES 1-10,

Defendants.

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO
RECONSIDER ORDER DISMISSING WITH PREJUDICE**

NOW COMES Plaintiff, ASTRO COMPANIES, LLC ("Plaintiff" or "Astro") by and through its undersigned counsel, and hereby submits its Reply to Defendants' Joint Response to Plaintiff's Motion to Reconsider the Court's Order dismissing the instant case as to all Defendants with prejudice. In support of its Reply, Astro states as follows:

A. Introduction

On February 12, 2025, this Court dismissed the instant case against all defendants based upon Defendant Matheson's argument, that Astro cannot state a claim for relief because the unsolicited fax advertisements at issue were not sent to a "telephone facsimile machine" within the meaning of the Telephone Consumer Protection Act of 1991 ("TCPA"). *See* Doc. 70, Dismissal Order at 4-8. As Plaintiff explained in its Motion to Reconsider, the Court's Order dismissing the case was in error because: (1) pursuant to 28 U.S.C. § 2342(1) ("the Hobbs Act"), the Court is bound by the FCC's 2003 Order and the 2015 WestFax Ruling (both of which are Final Orders) that the TCPA's definition of "telephone facsimile machine" encompasses not only traditional stand-alone facsimile machines but also personal computers and fax servers; (2) the

1

*Amerifactors* and *Ryerson* rulings relied upon the Court are not final orders, and therefore not covered by the Hobbs Act and not entitled to any particular deference; and (3) even if it were proper for this Court to determine the meaning of "telephone facsimile machine," the Court's narrow reading of that term would lead to unintended and absurd results. *See* Motion to Reconsider, Doc. 72 at 3.

In their Joint Response to Plaintiff's Motion, Defendants argue: (1) that it was proper for the Court to rely upon a declaratory ruling issued by the Consumer and Governmental Affairs Bureau ("the Bureau"), and not the full Federal Communications Commission ("the FCC"), even though that ruling was not a final order and was, therefore, neither reviewable nor entitled to deference; (2) that even if Plaintiff correctly challenged the Court's reliance upon the Bureau's declaratory ruling, Plaintiff should not be permitted to raise the issue because it was a "new argument" and would not alter the Court's dismissal Order; (3) that Plaintiff has no standing under the TCPA; and (4) that for various reasons, Plaintiff's claims against each specific Defendant should be dismissed.[1] (Doc. 75, Defs.' Resp. at 1–10). As will be discussed below, Defendants' arguments are unpersuasive.

B. Arguments[2]

1. **Contrary to Defendants' assertion, the Court did not properly rely upon the declaratory ruling in *Amerifactors* to determine that the TCPA's definition of "telephone facsimile machine" does not encompass online fax servers.**

---

[1] Defendants' various arguments presented in their Motions to Dismiss asserting that, for one reason or another, each Defendant is not subject to the Court's jurisdiction in this matter. *See* Docs. 37, 38, 39.

[2] To reiterate, in relevant part, the standard of review for a Rule 59(e) motion to reconsider, the Court
may grant reconsideration where *it "misapprehended the facts, a party's position, or the controlling law."* (citations omitted; emphasis supplied). *See* Mot. to Reconsider at 3.

As a threshold matter, Defendants' assertion that the Court's dismissal order turned on its interpretation of the definition of "telephone facsimile machine" directly supports Plaintiff's argument for reconsideration, as the full Commission (as opposed to the Bureau) has issued Final Orders interpreting that definition and, by virtue of the plain language of the Hobbs Act, district courts do not have jurisdiction to rule on this issue. Rather, "courts of appeals have exclusive jurisdiction over final orders issued by the FCC." *See Council Tree Investors, Inc. v. FCC*, 739 F.3d 544, 551 (10th Cir. 2014) (citing 28 U.S.C. § 2342(1)); *Horizon Tower Ltd., LLC v. Park County*, No. 2:23-CV-37-ABJ, 2024 U.S. Dist. LEXIS 193222, at *21 (D. Wyo. Oct. 4, 2024) (quoting *FCC v. ITT World Commc'ns, Inc.*, 466 U.S. 463, 468 (1984)). Indeed, the FCC has expressly withheld from the Bureau, which issued the declaratory ruling in *Amerifactors*, the authority to issue a "final order." 47 C.F.R. § 0.361. The statute that gives the FCC the authority to delegate its functions, 47 U.S.C. § 155, and the FCC regulations actually delegating those functions, draw a clear distinction between the FCC's bureaus and the full Commission itself, and the FCC has not delegated (and cannot delegate) to a bureau the authority to issue final orders. See *NTCH, Inc. v. Fed. Commc'ns Comm'n*, 877 F.3d 408, 413 (D.C. Cir. 2017) ("The Bureau's order was not a Commission order and, therefore, it was not an order subject to judicial review."). Defendants have identified no authority within this Circuit to the contrary.

Nevertheless, Defendants incorrectly assert that this Court properly adopted the declaratory ruling from *Amerifactors* in which the Bureau – and not the full Commission -- held that an online fax service falls outside the scope of the definition. Defendants erroneously assert that "[o]rders issued by bureaus on authority delegated by the [FCC] have the same force and effect as orders issued by the full Commission itself," and that the *Amerifactors* ruling constitutes a "final order" pursuant to the Hobbs Act. Defs.' Resp. at 3, 4. As Plaintiff explains

3

fully in its Motion to Reconsider and incorporated Memorandum, the *Amerifactors* ruling is *not* a final order of the FCC under the Hobbs Act. *See generally* Doc. 72 at 5- 10. By contrast, the FCC has unequivocally issued a Final Order, which is covered by the Hobbs Act, that the TCPA's definition of "telephone facsimile machine" encompasses not only traditional stand-alone facsimile machines but also personal computers and fax servers. In that Final Order, issued in 2003 to clarify the scope and implementation of the TCPA, the FCC acknowledged that there had been some question as to whether fax servers and personal computers should be subject to the unsolicited facsimile provisions. After considering various viewpoints, the FCC concluded that "faxes sent to personal computers equipped with, or attached to, modems and to computerized fax servers are subject to the TCPA's prohibition on unsolicited faxes," whereas the prohibitions simply do not extend to fax messages sent as email over the Internet. 2003 Order ¶¶ 142, 143, 145. *See* Mot. to Reconsider, Exhibit A. If anything is entitled to protection, it is the 2003 Final Order issued by the FCC, and not any declaratory rulings by the Bureau.

The Sixth Circuit addressed this question and concluded the *Amerifactors* Bureau Ruling is not a Hobbs Act "final order." *Lyngaas v. Curaden AG*, 992 F.3d 412, 427 (6th Cir. 2021) (declining to require exclusion of users of "online fax services" from certified class based on *Amerifactors* Bureau Ruling, in part, because "an application for review of the Bureau's ruling is currently pending before the FCC"). Moreover, the most recent district court to consider this question at the class certification stage certified an all-fax-recipients class and rejected the *Amerifactors* Bureau Order as non-final, following *Lyngaas*. *See Douglas Phillip Brust, D.C., P.C. v. Opensided MRI of St. Louis LLC*, 343 F.R.D. 581, 589–91 (E.D. Mo. Mar. 31, 2023). The *Brust* court recognized that the Amerifactors Bureau Ruling cannot be final under the Hobbs Act "because an application for review with the FCC is pending." *Id.* at 589 (citing *Levine Hat Co. v.*

4

*Innate Intelligence, LLC*, 538 F. Supp. 3d 915, 926 (E.D. Mo. 2021); *Mussat v. IQVIA Inc.*, 2020 WL 5994468, at *3 (N.D. Ill. Oct. 9, 2020)).

Defendants ignore *Lyngaas* and the plain language of the Hobbs Act and instead rely upon a Ninth Circuit unpublished decision that misconstrued various statutory and regulatory provisions and incorrectly held that the district court was bound to follow the *Amerifactors* declaratory ruling (as opposed to a final order) that the TCPA "does not apply to faxes **received** through an online fax service." *See* Defs.' Resp. at 3-5 (citing *True Health Chiropractic, Inc. v. McKesson Corp.,* 22-15710, 2023 WL 7015279, at *2 (9th Cir. Oct. 25, 2023), *cert. granted sub nom. McLaughlin Chiropractic Assoc., Inc. v. McKesson Corp.,* 145 S. Ct. 116 (2024)).[3] The Ninth Circuit's decision, however, was wrongly decided.

First, contrary to the holding in *True Health*, *Amerifactors* is not a **final order** of the FCC, and so it cannot be covered by the Hobbs Act, 28 U.S.C. § 2342(1). *Amerifactors* is currently on appeal to the full Commission. *See In re Amerifactors Fin. Group, LLC Pet. for Expedited Declaratory Ruling*, CG Docket Nos. 02-278, 05-338 (Application for Review (Jan. 2020)). That application for review is still pending. A decision on that application is a "condition precedent to judicial review." 47 U.S.C. § 155(c)(7).

The court in *True Health* attempted to explain away this dispositive procedural circumstance as follows:

> That there is a pending application for review of *Amerifactors* by the full Commission does not change this analysis. Orders issued on delegated authority are "effective upon release." 47 C.F.R § 102(b)(1). Unless the full Commission issues a stay pending review, *Amerifactors* remains in effect. *See id*. §§ 102(b)(2), 1.115(h)(2).

---

[3] Oral argument before the Supreme Court took place on January 21, 2025. A decision is expected in the coming months.

*True Health*, 2023 WL 7015279, at *3. That explanation does not hold up, as it is contrary to Ninth Circuit authority, Supreme Court authority, and the regulation relied upon by *True Health* that explicitly contradicts its "final order" mistake. In *U.S. West Commc'n, Inc. v. Hamilton*, 224 F.3d 1049, 1054 (9th Cir. 2000), the Ninth Circuit stated:

> In 1997, the Supreme Court held that, [a]s a general matter, two conditions must be satisfied for agency action to be "final": First, the action must mark the consummation of the agency's decision-making process—***it must not be of a merely tentative or interlocutory nature***. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.

*Hamilton*, 224 F.3d at 1054 (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)) (emphasis added). In *Hamilton*, the agency action before the court was "neither 'tentative' nor 'interlocutory.'" *Id*. at 1055. The court in *Hamilton* held that the district court lacked jurisdiction to decline to apply the FCC's "final order," even if the court doubted the soundness of the order. *Id*. In *True Health,* the Court mistakenly relied upon 47 C.F.R § 102(b)(2) (the regulation applicable to "Non-hearing and interlocutory actions") for its erroneous assertion -- that the "pending application for review of *Amerifactors* by the full Commission does not change this analysis." That regulation addresses petitions for reconsideration of a ***non-hearing action*** (and in fact specifically excludes petitions for reconsideration of an "interlocutory action.") *See* 47 U.S.C. § 1.102(b)).

The petitioner in *Amerifactors* (Career Counseling) ***did not*** file a petition for reconsideration of a non-hearing action but instead filed an application for review, which is addressed by § 102(b)(3). The applicable regulation states:

> (3) If an ***application for review*** of a non-hearing or ***interlocutory*** action is filed, or if the FCC reviews the action on its own motion, the FCC may in its discretion stay the effect of any such action until its review of the matters at issue has been completed.

6

47 C.F.R § 102(b)(3). (A copy of Section 1.102 § "Effective dates of actions taken pursuant to delegated authority" is attached hereto as **Exhibit 1**). In other words, because *Amerifactors* is "interlocutory," a fact conceded by *True Health* through its reliance on § 102(b), it is thus a non-final order under the authorities cited above. *Hamilton*, 224 F.3d at 1054; *Bennett*, 520 U.S. at 177-78. As such, it is within the FCC's discretion to stay the effect of the Amerifactors ruling until its own review of the matter has been completed. If *Amerifactors* were a final order, there would be nothing left for the FCC to do, including deciding the application for "review" of the *Amerifactors* decision. Moreover, if *Amerifactors* were a final order, that necessarily means a single employee (not a Commissioner of the FCC) of the Bureau has somehow acquired the authority to issue a final order that bypasses the full FCC, is binding under the Hobbs Act, and can be immediately appealed to a circuit court of appeals for judicial review. That is absurd. In fact, the regulations specifically state that the Chief of the Bureau "shall" refer the following matters to the FCC "en banc" for disposition: "(a) Notices of proposed rulemaking and of inquiry and ***final orders*** in such proceedings," and "(b) Applications for review of actions taken pursuant to delegated authority . . ."  47 C.F.R § 0.361(a)-(b) ("Authority delegated"). In other words, issuance of final orders and applications for review are for the full Commission, and not for the Bureau Chief exclusively.[4]

Additionally, the term "effective upon release," as used in § 1.102(b)(1), does not somehow convert the non-final Bureau ruling in *Amerifactors* into a final order for purposes of

---

[4] 47 C.F.R. § 1.102(3) provides: "If an application for review of such final decision is filed, or if the FCC on its own motion orders the record of the proceeding before it for review, the effect of the decision is stayed until the FCC's review of the proceeding has been completed." If the Chief of the Consumer & Governmental Affairs Bureau has indeed issued a final decision in *Amerifactors (*putting this employee on equal footing with an FCC Commissioner), and *True Health* has ruled that he has, the effect of that decision is stayed until the application for review proceeding has been completed.

7

the Hobbs Act. Had Career Counseling filed a petition for judicial review in a circuit court of appeals, the petition would be dismissed because there is no decision on the application for review of *Amerifactors* before the full Commission, which is a "condition precedent to judicial review." 47 U.S.C. § 155(c)(7). That a Bureau ruling is "effective upon release" simply means that the Court can address arguments made by Plaintiff regarding *Amerifactors*, namely: (i) its inapplicability based on the plain language of the TCPA, (ii) that under the Hobbs Act, the *2003 Order* (a final order of the full FCC), and the *WestFax Ruling* (an unchallenged order of the Bureau) jurisdictionally must be followed, (iii) that because it is interpretive (and *assuming arguendo* it is not barred by the Hobbs Act jurisdictional prohibition), *Amerifactors* is not entitled to *Chevron* deference, and (iv) *Amerifactors* is unpersuasive and thus not entitled to *Skidmore* deference.

*Amerifactors* is interpretive rather than legislative, and would not, contrary to Defendants' assertion, have the same force and effect as a Final Order from the FCC. There is a "central distinction" in administrative law between legislative rules and interpretive rules. *Aposhian v. Barr*, 958 F.3d 969, 979 (10th Cir. 2020) (citing *Chrysler Corp. v. Brown*, 441 U.S. 281, 301 (1979)). A legislative rule is one that "is promulgated pursuant to a direct delegation of **legislative power** by Congress and . . . changes existing law, policy, or practice." *Id*. at 979-80 (citation omitted). Interpretive rules are those "issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers." *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96-97 (2015); *Aposhian,* 958 F.3d at 979 (same) (citing *Shalala v. Guernsey Mem. Hosp.*, 514 U.S. 87, 99 (1995)). Because they are not an exercise of delegated legislative authority, interpretive rules "do not have the force and effect of law and are not accorded that weight in the adjudicatory process*" Carlton & Harris Chiropractic, Inc. v. PDR Network*, 982

F.3d 258, 264 (4th Cir. 2020) (citing *Perez*, 575 U.S. at 97) (citation omitted); *see also id.* ("[A] court is not required to give effect to an interpretative regulation") (citing *Batterton v. Francis*, 432 U.S. 416, 425 n.9 (1977)); *Kisor v. Wilkie*, 139 S. Ct. 2400, 2420 (2019) (plurality opinion) ("An interpretive rule itself never forms the basis for an enforcement action—because, as just noted, such a rule does not impose any legally binding requirements on private parties"). Because *Amerifactors* is an interpretive ruling, it is not entitled to Hobbs Act protection. *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2055 (2019) ("if the relevant portion of the [FCC's] 2006 Order is the equivalent of an 'interpretive rule,' it may not be binding on a district court, and a district court therefore may not be required to adhere to it"); *Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, 982 F.3d 258, 264 (4th Cir. 2020) (Hobbs Act inapplicable to interpretative FCC final order); *Robert W. Mauthe v. Millenium Health, LLC*, 2020 WL 2793954, at *17 (E.D. Penn. May 29, 2020) (Hobbs Act applies to legislative rules, not non-binding interpretive rules), *aff'd* 58 F.4th 93 (3d Cir. 2023).

Defendants' reliance upon the Ninth Circuit's *True Health* opinion that *Amerifactors* is a final order and that it may be appealed to a circuit court of appeals is, quite simply, wrong and, as *Amerifactors* is interpretive, it does not have the force and effect of law. As such, courts are free to disagree with it, particularly in light of contrary Final Orders issued by the FCC.

   **2. Contrary to Defendants' assertion, Plaintiff is not foreclosed from raising the issues presented in its Motion to Reconsider, and proper consideration of those issues would alter the Dismissal Order.**

Noting that a motion to reconsider cannot be used to introduce new legal theories, arguments, or evidence that could have been presented before judgment, Defendants suggest that Plaintiff should be precluded from challenging the Court's Order.

On June 28, 2024, more than a month after the instant matter was fully briefed[5] the Supreme Court held that courts are no longer required to defer to a federal agency's interpretation of an ambiguous statute (assuming, arguendo, it is ambiguous) pursuant to "*Chevron*" deference, and may instead exercise their own independent judgment to decide whether an agency acted within its statutory authority. *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024). The Supreme Court's decision had no impact on agency decisions subject to the Hobbs Act. *Id.* As such, even if the *Amerifactors* and other rulings from the Bureau may have at one time, including during briefing of Motions to Dismiss in this matter, been entitled to "*Chevron*" deference – assuming one could successfully argue the statutory language is ambiguous – that is no longer the case. *Id.* As Defendants acknowledge, a party may bring a Rule 59(e) Motion to Reconsider if, among other reasons, there has been an intervening change in the controlling law. Def. Resp. at 2 (citations omitted). Plaintiff did not have access to the Supreme Court's binding decision in *Raimondo* at the time the Motions to Dismiss were briefed, and therefore could not possibly have raised applicable arguments regarding the propriety of deference to administrative rulings prior to the time the Motion was fully briefed.

Moreover, as has been explained in Plaintiff's Motion to Reconsider as well as Section 1 above, the question of whether the District Court was entitled to rely upon the *Amerifactors* decision would have materially altered the outcome of the Dismissal Order. *See generally* Doc. 72. Contrary to Defendants' assertions, the *Amerifactors* ruling is not a final order, and does not

---

[5] Defendant Matheson's Motion to Dismiss was filed on April 18, 2024 (Doc. 54); Plaintiff filed its Response on May 8, 2024 (Doc. 57); Defendant Matheson filed his Reply brief on May 22, 2024 (Doc. 65). The remaining Defendants filed their Motion to Dismiss on March 12, 2024 (Doc. 37-39); Plaintiff filed its Response on April 2, 2024 (Doc. 44); remaining Defendants filed their Reply on April 19, 2024 (Doc. 55). This Court's decision on the Motions to Dismiss was filed February 12, 2025.

carry the full force and effect of a final order from the FCC. As such, any deference was misplaced for a variety of reasons. If, as Defendants had suggested, the *Amerifactors* ruling had been entitled to *Chevron* deference, any such analysis would be materially altered given the Supreme Court's removal of *Chevron* deference after this matter was fully briefed but before this Court issued its ruling. A post-*Raimondo* analysis would compel a different result from that reached by the Court.

3. **Defendants' reiteration of their argument that Astro has no standing under the TCPA is unavailing.**

Contrary to Defendants' assertion, Astro is indeed a consumer and the recipient of the unsolicited faxes transmitted by Defendants, and is thereby protected by the TCPA. Astro is not, as Defendants argue, a "middleman telecommunications provider that receives, stores, and forwards faxes onto its customers – who themselves are the intended recipients." Def. Resp. at 6. Astro is not an online fax service subscriber as Astro provides online fax services to its customers. See Doc. 10, FAC at ¶¶ 24, 25. Astro is the subscriber for each telephone line that was sent the faxes at issue in this case. *Id.* ¶ 26. Astro used its own equipment to receive the faxes at issue in this case. *Id.* ¶ 27. Astro "owns and operates the resources (including but not limited to server hardware, software and telephone services) upon which the faxes at issue were received, all of which have the capacity to print." *Id.* ¶ 10. *See also Lyngaas*, 992 F.3d at 426-427.[6] Astro was the owner of the fax numbers at issue when the faxes at issue were sent, and was

---

[6] In *Lyngaas,* the Sixth Circuit emphasized that the FCC "reinforced" the point that the TCPA is not restricted to stand-alone fax machines when, after a period of notice and comment, it explained in the 2003 Order that "developing technologies permit one to send and receive facsimile messages in a myriad of ways," and thereby ruled that "faxes sent to personal computers equipped with, or attached to, modems and to computerized fax servers are subject to the TCPA's prohibition on unsolicited faxes." *Lyngaas*, 992 F.3d at 426 (citing 2003 Order). That court emphasized the FCC's reasoning, cited above, that the purpose of requiring that a

11

the end user. *See* Doc. 57 at 7. Plaintiff, not a non-party, is in possession of the actual faxes received on the telephone numbers that it owned. *Id.* Astro is not now and has never been a subscriber to any online fax service. Doc. 10, FAC at ¶ 24. Astro does not now and never has engaged in mass fax broadcasting of any kind. Doc. 57 at 7. Plaintiff's business is negatively impacted when a party sends thousands of faxes to numbers owned by Plaintiff because its resources fill up and legitimate faxes cannot be received. *Id.* Finally, contrary to Defendants' suggestion, Plaintiff did not provide prior express invitation or permission to be sent the faxes at issue. *Id.;* FAC at ¶¶ 20, 41, 45.

Harms like those which Astro continues to suffer have been recognized as the basis for the concrete injury required for standing in this Circuit. *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1193 n.3 (10th Cir. 2021) (A "call itself formed the basis for [] concrete injury"). The Sixth Circuit case cited by Defendants in support of their argument, does not stand for the proposition asserted in Defendants' memorandum – to wit, that because there are pre-assigned customer ID's on the faxes at issue, those customers (not Astro) are the intended recipients and, because they appear to have a prior existing relationship with Defendants, Astro has no standing. *See* Def. Resp. at 7 (*citing Imhoff Investment, LLC. v. Alfoccino, Inc.,* 792 F.3d 627 (6th Cir. 2015). This is not only a misconstruction of *Imhoff,* but is also an unsupportable leap of logic.

In *Imhoff*, the court noted that the TCPA gives recipients of unsolicited fax advertising the legal right to recover damages and obtain injunctive relief from the senders of those faxes. *Id.* at 633; 47 U.S.C. § 227(b)(1)(C), (b)(3). The court went on to note that Congress intended to remedy a number of problems associated with junk faxes, including the cost of paper and ink, the

---

telephone have the "capacity to transcribe text or images" is to ensure that the prohibition on unsolicited faxing not be circumvented, as Defendants are attempting to do here.

difficulty of the recipient's telephone line being tied up, and the stress on switchboard systems. Thus, viewing or printing a fax advertisement is not necessary to suffer a violation of the statutorily created right to have one's phone line and fax machine free of the transmission of unsolicited advertisements. *Imhoff,* 792 F. 3d at 634. Other circuits have similarly held that a plaintiff has standing to sue under the TCPA based solely upon the *sending* of junk faxes and resulting occupation of telephone lines and fax machines. *See Palm Beach Golf Center-Boca, Inc. v. Sarris*, 781 F.3d 1245, 1250-51 (11th Cir. 2015); *Holtzman, C.P.A. v. Turza*, 728 F. 3d 682, 684 (7th 2013); *Owners Ins. Co., v. European Auto Works, Inc.,* 695 F.3d 814, 820 (8th Cir. 2012). *Imhoff* unequivocally held that a Plaintiff need not remember or have personal knowledge of the content of the faxes to have standing to establish that it has standing as a recipient of unsolicited fax advertisements. *Imhoff*, 792 F. 3d at 634. As the *Imhoff* court noted, the TCPA bans unsolicited faxed advertisements, not all unsolicited faxes. To conclude that a "plaintiff must see the fax to discern whether it is an advertisement or not . . . is incorrect." *Id.*

> **4. Defendants present no viable arguments to suggest that Astro's claims against any of the individual Defendants should be dismissed.**

As an alternative to their unavailing arguments regarding deference to non-final orders from inferior bureaus (as opposed to the full FCC) and their unsupported suggestion that Astro does not have standing to bring this action, Defendants have reiterated the arguments raised in their Motions to Dismiss the First Amended Complaint to suggest that individual defendants should be dismissed for lack of jurisdiction and failure to state a claim.

    a. Defendant Matheson

Regarding Defendant Matheson, Defendants suggest that Astro failed to state a claim against him personally. In support of this argument, Defendants assert that the fax "broadcaster" (Matheson) can be liable in addition to the sender of the fax only if it demonstrates a high degree

13

of involvement in the unlawful activity and fails to take steps to prevent such transmission." Def. Resp. at 7-8 (*citations omitted*). Defendants go on to assert that Matheson is not a facsimile broadcaster, and that personal liability cannot attach to him as he is not a corporate officer or agent of WestFax. *Id.* As explained in Plaintiff's Response to Defendant Matheson's Motion to Dismiss, Plaintiff has specifically alleged Matheson had a high degree of involvement and actual notice of an illegal use with respect to the unsolicited faxes at issue in this case. Doc. 57 at 3-5. Moreover, Matheson's liability was alleged because of his direct conduct and not because of his employment (or independent contractor status) in relation to his co-defendants. *Id.* To avoid undue repetition, Plaintiff refers the Court to its argument on this point in its Response to Defendant Matheson's Motion to Dismiss. *Id.*

    b. <u>Defendants Clark and JBlast</u>

Defendants go on to suggest that the claims against Defendants Clark and JBlast should be dismissed for lack of personal jurisdiction. Def. Resp. 8-9. Specifically, Defendants assert that Defendant Clark's contacts *in his personal capacity* with the forum state fail to satisfy the "minimum contacts" requirements. *Id.* Similarly, Defendants assert that the court does not have personal jurisdiction over JBlast, as allegations regarding "the location of computer infrastructure are not enough to say that JBlast personally availed itself of Colorado." *Id.*

As the instant action has been brought pursuant to federal question jurisdiction, and not merely diversity jurisdiction, Defendants' reliance upon an absence of "minimal contacts" is beside the point. Because the illegal conduct occurred in Colorado, and there are multiple defendants, this Court has personal jurisdiction over Clark and JBlast. As Plaintiff explains in its Response to the Motion to Dismiss filed by Defendants Clark and JBlast, it has made a prima facie showing of personal jurisdiction over those two defendants, and they have failed to present

14

a compelling case demonstrating that circumstances render that jurisdiction unreasonable. *See* Doc. 44 at 4-5. Defendant Clark – the owner of WestFax -- has subjected himself to this forum pursuant to both general and specific jurisdictional analysis. Defendant JBlast, a wholly owned subsidiary of WestFax, has also satisfied the jurisdictional requirements in this forum. To avoid undue repetition, Plaintiff stands on the arguments set forth in its Response to the Motion to Dismiss filed by Clark, JBlast, and WestFax and refers the Court thereto. Doc. 44 at 2-14.

c. WestFax Defendants

Lastly, Defendants challenge jurisdiction by this Court over WestFax, asserting that Plaintiff has failed to sufficiently state a claim. Doc. 75 at 9. Again, to avoid undue repetition, Plaintiff stands on the arguments set forth in its Response to the Motion to Dismiss filed by Clark, JBlast, and WestFax and refers the Court thereto. Doc. 44 at 14- 24.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff's Motion to Reconsider, vacate the judgment entered in favor of Defendants (Doc. 71), and such other relief this Court deems appropriate under the circumstances.

/s/Ross M. Good
Ross M. Good, Esq.
The Good Law Group
800 E. Northwest Hwy, Suite 814
Palatine, IL 60074
Phone: (847) 600-9576
Email: ross@thegoodlawgroup.com
Dated: April 11, 2025

**Attorney for Plaintiff Astro Companies, LLC.**

**CERTIFICATE OF SERVICE**

I hereby certify that on April 11, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of record.

/s/ Ross M. Good